"MARY   KENNESON," Petitioner,  *v.*  "JOHN   KENNESON,"
Respondent.*

Domestic Relations Court of New York, Family Court, Bronx County,
July 10, 1942.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

Sunkenberg & Gereghty [James R. Gereghty of counsel], for the petitioner.

John A. Bolles, for the respondent.

SICHER, J. This proceeding involves unsettled questions as to the effect, upon this court's jurisdiction, of a prior judgment of the Supreme Court of the State of New York dismissing petitioner's complaint in an action for separation, in which action, however, the husband interposed no counterclaim nor affirmative defense but only denials.

Such a judgment between the parties was entered February 27, 1942, and directs merely that the complaint be dismissed, without costs. It is based upon findings of fact that " the defendant has not been shown to be guilty of cruel and inhuman treatment of the plaintiff, or of such conduct toward the plaintiff as renders it unsafe or improper that the plaintiff cohabit with the defendant, as alleged in complaint " and that " the plaintiff is not entitled to support and maintenance from the defendant in this action; " and it embodies the conclusion of law " that neither party is entitled to a judgment of separation from bed and board as against the other."

The parties intermarried on June 28, 1919 and have one child ("Edith"), born September 4, 1925.

The separation action was commenced on August 20, 1941. At that time the parties and the child still resided together in the upper floor apartment of a two-family house (100 X Street, Bronx) owned by petitioner. The complaint alleges that, for the reasons detailed therein, " it has become and it is unsafe for the plaintiff and the child of the parties to continue to live with the defendant, and although under the circumstances plaintiff would have been obliged to leave the defendant and take the child of the parties away with

her and to live with the child separate and apart from the defendant, she has been unable to do so, because the house occupied by the plaintiff and defendant belongs to the plaintiff and plaintiff cannot abandon her own property " (Clause 6); and it prays for "judgment for separation from the bed and board of defendant, forever, with a reasonable provision to be made for her support and maintenance and for the support, education and maintenance of the child of the parties out of defendant's property and earnings and that the custody and care and maintenance of the child be awarded to plaintiff."

Petitioner's motion for counsel fee was granted but motion for alimony *pendente lite* denied.

On September 16, 1941 respondent moved out with the daughter, who testified for him upon the trial of the separation action and is still aligned with him.

No question of custody is, or could be, raised in this Family Court Division proceeding (*Matter of Berman* v. *Berman*, 169 Misc. 921) nor may the jurisdiction of the Children's Court Division be invoked (inasmuch as " Edith " attained the age of sixteen years on September 4, 1941). But that the daughter is under respondent's care and that he is providing her support are material " circumstances of the respective parties " to which must be accorded " due regard " when and if there become applicable the provisions of subdivision 1 of section 92 of the New York City Domestic Relations Court Act.

Respondent sent to petitioner five dollars a week between September 16, 1941 and October 14, 1941, but nothing thereafter.

On March 3, 1942 petitioner's request to file a support petition in this court was informally denied by the justice then presiding, without prejudice, however; on May 5, 1942 such petition was duly filed, both parties attended before the court, there was ordered the customary probation bureau investigation and report (N. Y. City Dom. Rel. Ct. Act, §§ 31, 128) and a hearing was scheduled for May 21, 1942. On that day the case was fully tried by able counsel; decision was then reserved pending the submission and study of briefs, upon the understanding that any support order would be entered *nunc pro tunc* as of May 21, 1942.

It was shown that petitioner acquired title to premises 100 X Street, Bronx in 1936 from her mother's estate; that during the latter's lifetime the parties had occupied the upper floor apartment as tenants; that since the removal of respondent and the daughter on September 16, 1941 petitioner has continued to occupy that apartment alone; that the lower floor is leased to another family at a rental of $32 a month; that the annual carrying charges of the

entire premises amount to approximately $350 a year, consisting of real estate taxes of about $135, water charges of about $20, coal costing about $140, fire insurance premiums of $8, liability insurance premiums of $12.80, and repairs, during 1941, costing about $30; and that the property is now assessed at $4,500 and is free and clear of mortgage, although subject to the lien of unpaid real estate taxes for 1941 and the first half of 1942

It was further shown that petitioner had a permanent license from the board of education of the city of New York until after her marriage; that since 1937 she has been the holder of a substitute license to teach in the elementary schools; that she served as such substitute for a total of sixty-four days between April 16, 1941 and March 15, 1942, at a stipend of $7 for each day of service; that her compensation as such substitute from May 1 to December 31, 1940 was $250, for the calendar year 1941 was $722.22, and for the first four months of 1942 only $75; that such income will wholly cease until the opening of the fall term; and that because of the cut in the budget of the board of education there will probably be little, if any, call for her services as substitute during the ensuing school year.

Petitioner testified that she has no remaining bank account or cash; that her sole income is the above-described net rental and uncertain and diminishing substitute teacher compensation; that she borrowed from her sisters $170 since August, 1941 and that she is largely dependent on their bounty for food. Respondent's counsel endeavored to elicit by cross-examination that petitioner has hidden savings from respondent's earnings of former years. But I am satisfied that, unless petitioner be guilty of false swearing, she has at this time no resources except those above detailed and that, in default of other employment, she is likely to become a public charge unless that conclusion of law be precluded by the fact of her ownership of the 100 X street premises. On that phase there was received the evidence of an experienced representative of the department of welfare, whose qualifications as an expert on home relief were unquestioned and who testified, in substance, in response to hypothetical questions, that an applicant who owns real estate is not thereby necessarily rendered ineligible for temporary home relief assistance if the applicant's sole asset be such real estate but that it is the practice of the department of welfare to require any such home relief recipient to consider sale or mortgage of the property or renting the space occupied by such applicant and removing to cheaper quarters if additional net income would thereby result.

It was stipulated that respondent's sole income is his net compensation of about $230 a month as assistant shop foreman of X Railroad. And, respondent testified, on May 21, 1942 he owed Railroad Credit Union a balance of $104 and Y Trust Company $285 (payable at the rate of $18 a month) on an original loan of upwards of $300 contracted for payment of petitioner's counsel fee and his own lawyer's charges in the separation suit.

In response to direct questions put by the court in the course of the Family Court trial, each party expressed complete unwillingness to re-establish a home or again live together. Both seemed to prefer the existing arrangements, except that petitioner feels aggrieved at the daughter's attitude and, of course, respondent's refusal to contribute anything towards her support since October 14, 1941.

Upon the foregoing facts petitioner urges that she is entitled to support according to respondent's means (under Dom. Rel. Ct. Act, § 92, subd. 1), in the amount of $15 a week, and, in any event and as a minimum, to a contribution of some appropriate lesser sum upon the theory that otherwise she would require maintenance aid out of public funds. Respondent, on the other hand, contends that the Supreme Court judgment dismissing the complaint in the separation action restricts the jurisdiction of this court to the entry of a support order upon a public charge basis and, further, that the evidence does not justify a present finding that petitioner is likely to become to any extent a public charge.

Those respective contentions raise squarely the question as to the precise meaning of the following language of subdivision 4 of section 137 of the Domestic Relations Court Act: "After final adjudication by the supreme court denying alimony in a separation action, if in the opinion of the family court the circumstances of the parties have changed, or if it is shown to the satisfaction of the family court that the petitioner is likely to become a public charge, the family court may entertain a petition for support."

The sentence just quoted was constituted a separate subdivision, and designated " 4 " by chapter 762 of the Laws of 1942, but in all other respects that amendment continues unchanged the foregoing language as it existed since the original enactment of section 137 by chapter 482 of the Laws of 1933.

There can be no doubt that the words " final adjudication by the supreme court denying alimony in a separation action " embrace a case where a decree of separation was entered in favor of the husband, either upon his complaint or counterclaim. In such type of case it is manifest, and well settled, that the Supreme Court judgment relieves the husband of the duty to support the

wife except to the residual extent recognized and enforceable under the statutory provision just quoted. (see *Anonymous* v. *Anonymous*, 20 N. Y. Supp. [2d] 514.) Typical decisions in that category are *Matter of Chandler* v. *Chandler* (241 App. Div. 390); *Gilgun* v. *Gilgun* (N. Y. L. J., May 2, 1935, p. 2249); *Cosgrove* v. *Cosgrove* (23 N. Y. Supp. [2d.] 586), and *Anonymous* v. *Anonymous*, (*supra.*) But, in my opinion, despite certain language (hereinafter analyzed) in *Matter of Collins* v. *Collins* (245 App. Div. 612) and *Myers* v. *Myers* (251 id. 267), different considerations are applicable to a case where there was only a dismissal of the wife's separation action complaint unaccompanied by an affirmative finding of abandonment of the husband by the wife or cruel and inhuman treatment of him by her or such conduct on her part towards him as may render it unsafe and improper for him to cohabit with her and a consequent reduction of the husband's support duty to one of merely indemnifying the community against the burden of her support as a public charge. (cf. *People* v. *McCarthy*, 257 N. Y. 567; affg., 139 Misc. 746; *Hodson* v. *Holmes*, 162 id. 226; *Aronowitz* v. *Aronowitz*, 159 id. 103; *Hodson* v. *Picker*, 159 id. 356; *People* v. *Schenkel*, 258 N. Y. 224.)

A Supreme Court judgment of the kind entered in the petitioner's unsuccessful separation action would not *ipso facto* forever relieve respondent of the obligation, assumed upon the marriage, of supporting petitioner " according to his means and station in life " (*Harding* v. *Harding*, 203 App. Div. 721, 722; affd., 236 N. Y. 514; cf. *Garlock* v. *Garlock*, 279 id. 337, 340); nor, in my opinion, is it such a " final judgment denying alimony " as would necessarily preclude petitioner from seeking a Family Court order for support according to respondent's means.

True, the Supreme Court judgment would be *res judicata* as to all issues necessarily determined by it; petitioner could not relitigate any such issue either in the Supreme Court or the Family Court but must sustain a new separation action complaint or her Family Court petition by facts either not involved in the original Supreme Court action or occurring since the entry of the judgment therein. But effect must be given to the fundamental difference between a judgment merely dismissing a wife's complaint for separation and one which affirmatively sustains the husband's complaint or counterclaim for separation. " Judgment modified by striking therefrom the following: ' and it is further Ordered, Adjudged and Decreed, that the plaintiff, Esther V. Litt is not entitled to any support or maintenance from the defendant, Sol Litt.' As so modified the judgment is unanimously affirmed, without costs. In our opinion the Special Term was without authority to make that

part of the judgment, inasmuch as the defendant did not counter-claim for a separation, and no judgment of separation was given in his favor, thereby leaving the matrimonial status of the parties unchanged by the dismissal of the plaintiff's amended complaint." (*Litt* v. *Litt*, 234 App. Div. 870; leave to appeal to the Court of Appeals denied, 235 id. 631; cf. *O'Leary* v. *O'Leary*, 256 id. 130; *Harlow* v. *Harlow*, 123 Misc. 53.)

Effect must also be given to the further settled doctrine that after dismissal of a wife's complaint in a separation action for failure to sustain its allegations she is, nevertheless, privileged to recant, and that if she thereupon make a timely and *bona fide* offer to resume marital relations and such offer be unjustifiably rejected or ignored, a new cause of action for separation arises in her favor. (*Silberstein* v. *Silberstein*, 218 N. Y. 525; *Mirizio* v. *Mirizio*, 248 id. 175; *Bohmert* v. *Bohmert*, 241 id. 446; *O'Leary* v. *O'Leary*, *supra*; *Harlow* v. *Harlow*, *supra*; *Brauch* v. *Brauch*, 142 Misc. 464; cf. *Solomon* v. *Solomon*, 263 App. Div. 678.)

Consequently, if petitioner had manifested upon the hearing before me a *bona fide* willingness for reconciliation and respondent declined such overture there would, in my opinion, have been jurisdiction to award to petitioner support according to respondent's means and not merely on a public charge basis. But, as above stated, no such offer was made; on the contrary, each party indi-cated a set preference and determination to continue living apart. " If a married couple, through infirmities of temper leading to con-tinual bickering, altercations and nagging, cannot and do not wish to live together, the door is open for them to separate. But a separation by judgment of this court which relieves the wife from all marital obligations except chastity and continues the husband's obligation to support, can be obtained only for causes specified in the statute * * *." (*Umbach* v. *Umbach*, 183 App. Div. 495, 496.) That is, the existing situation is analogous to one where the parties are living separate by consent (cf. *Solomon* v. *Solomon*, 256 App. Div. 959, affd., 282 N. Y. 565), a condition which may be terminated by a request from either spouse to the other, in good faith, for a renewal of the marital status. (see 1 Bishop on Mar-riage, Divorce and Separation, § 1705; *Williams* v. *Williams*, 130 N. Y. 193, 198; *Newing* v. *Newing*, 45 N. J. Eq. 498, 503; 18 A. 166).

Thus, we are not here dealing with the case of a husband refusing to take back a penitent wife and to support her either in a re-estab-lished home or anywhere else, in which event the question for determination would be the *bona fides* and timeliness of the wife's offer of reconciliation. Instead, the situation presented is that of a wife petitioning this court to grant to her separate maintenance

recently denied by the Supreme Court and without her adducing any evidence whatever that her continued unwillingness to resume marital relations is based upon any facts not litigated in the Supreme Court and there conclusively determined to be insufficient justification for a demand for separate maintenance. Upon such a record a support order of this court beyond a public charge basis amount would properly come within the same condemnation as the orders reversed in *Myers* v. *Myers* (*supra*) and *Matter of Collins* v. *Collins* (*supra*). For, quite apart from the provisions of section 137 of the Domestic Relations Court Act, and whether or not subdivision 4 of that section be applicable to the situation here presented, granting of petitioner's demand for support according to respondent's means in the face of her unchanged attitude toward him and her unwillingness to rejoin him would violate *res judicata* and encourage the improper practice of resort to the Family Court for relief after an adverse decision of the Supreme Court upon identical facts.

*Matter of Collins* v. *Collins* (*supra*) and *Myers* v. *Myers* (*supra*) do contain language fairly susceptible of the construction that the above-quoted subdivision 4 of section 137 of the Domestic Relations Court Act, is applicable to a judgment merely dismissing the wife's complaint for separation as well as to a judgment affirmatively granting separation to the husband. But such construction seems inconsistent with the above-discussed principle enforced in *Litt* v. *Litt* (*supra*); *Silberstein* v. *Silberstein* (*supra*) and *O'Leary* v. *O'Leary* (*supra*) and the particular result in each of those decisions is sustainable on other grounds. Thus, the primary basis for the reversal of the Family Court order in *Matter of Collins* v. *Collins* (*supra*) was that " the Supreme Court by its findings and decision in the separation action judicially determined that the husband's conduct was not cruel or inhuman, also that his conduct was not such as to make it unsafe or improper for the wife to continue to live with him. The Supreme Court further found that the husband has not abandoned or failed to support the wife " (p. 613), and that " the judgment of the Supreme Court, that the wife was not entitled to live apart from her husband, is *res adjudicata* and the Family Court had no power to make a contrary finding " (p. 614); that is, the Family Court order was in derogation of the prior adjudication of the Supreme Court upon identical issues. Moreover, another sufficient ground could have been the fact that at the time when the wife filed the support petition in the Family Court there was still pending and undetermined her appeal from the Supreme Court judgment dismissing the complaint in her separation action and such recourse to the Family Court was, therefore, a violation of the principle that the Supreme Court had exclusive jurisdiction as the

forum to which she had first turned, and, that, in default of proof of the likelihood of her becoming a public charge, the Family Court petition did not fall within the purview of the first part of the second sentence of section 137 of the Domestic Relations Court Act (in its form before the 1942 amendment). (see *Matter of Costa* v. *Costa*, 247 App. Div. 192; " *Varney* " v. " *Varney*," 178 Misc. 165, 168.)

Similarly, *Myers* v. *Myers* (*supra*) was a case in which, although the husband's answer in the wife's separation action contained no counterclaim, it did allege, in addition to denials, cruel and inhuman treatment and abandonment by her, repeated efforts to induce her to come back and his continued willingness and desire for her return; and, it appears from examination of the record on appeal, the judgment of the Supreme Court not only dismissed the complaint but expressly adjudged that " the report of the Referee be and the same hereby is confirmed and his findings of fact and conclusions of law be and they hereby are made the findings of fact and con- clusions of law of the Court " and that the referee had found not only that the husband was not cruel or inhuman to the wife nor did he commit any act of cruelty alleged in the complaint but that the wife had moved out of the respondent's home and rejected several requests to return and refused to live with him. Possibly, a dif- ferent conclusion might have been reached if it had been urged that in the absence of a counterclaim for separation those findings of fact and conclusions of law were not *res judicata* on the issue of abandonment. But that point was not raised, and on the state of the record before the Family Court and the Appellate Division the Family Court order was in derogation of the prior Supreme Court judgment and reversible on that ground, because the only new fact presented to the Family Court was petitioner's offer to return made shortly before the filing of the Family Court petition and that offer was adjudged by the Appellate Division not to have been made in good faith.

As commented elsewhere (" *Varney* " v. " *Varney*," *supra*) section 137 of the Domestic Relations Court Act enlarges, rather than restricts, the jurisdiction of the Family Court. By it a hus- band who has been granted a decree of separation may nevertheless be required to contribute support to the extent of preventing his wife from becoming a public charge. But it is clearly not the inten- tion of any provision of section 137 of the Domestic Relations Court Act to empower the Family Court to disregard and override any adjudication of the Supreme Court upon identical facts. In any event a support order of this court, whether according to respond- ent's means or only on a public charge basis, must be predicated

upon facts not already determined differently by a prior Supreme Court judgment, whether merely a dismissal of the wife's or the husband's complaint or a decree of separation in favor of the husband.

Assuming *arguendo*, but not deciding, that both those types of Supreme Court adjudications are contemplated and covered by subdivision 4 of section 137 of the Domestic Relations Court Act, the Family Court is thereby empowered to act only upon satisfactory proof that either " the circumstances of the parties have changed." or " petitioner is likely to become a public charge." The meaning of the words " circumstances of the parties have changed " in that particular context has not been squarely construed in any discovered decision. It is not clear, nor necessary to decide now, what kind of change of circumstances is contemplated in a case where the " final adjudication by the Supreme Court denying alimony " was a decree of separation in favor of the husband. But it seems to me unquestionable that where such adjudication was only a dismissal of the wife's complaint or of the husband's complaint or counterclaim or a simultaneous dismissal of both parties' alleged causes of action, the Family Court may make a support order in an appropriate amount upon proof of material new facts occurring since, or not determined by, the Supreme Court judgment, *e. g.* an unaccepted timely *bona fide* offer of reconciliation. And perhaps the provision as to change of circumstances is nothing more than an express statement of the applicability of principles of *res judicata.* But regardless of the general intent and scope of that statutory language, suffice it to hold here that respondent's removal from petitioner's home on September 16, 1941 did not constitute such change of circumstances of the parties. In the light of the facts surrounding that departure and petitioner's unwillingness to resume marital relations, this court would not be justified in making a support order upon the theory of abandonment. For, when one spouse leaves the other during the course of a matrimonial action between them, such going away is not necessarily an abandonment. (see *Bohmert* v. *Bohmert, supra; Mirizio* v. *Mirizio, supra; Silberstein* v. *Silberstein, supra.*) Since there had then recently been served upon respondent a complaint alleging his serious unfitness as mate, his moving out of petitioner's home during the pendency of the separation action was one of the very things she asked for in the complaint, and despite his ceasing to contribute to her support his conduct did not amount to a legal abandonment within the purview of the authorities just cited. Moreover, such departure antedated the Supreme Court judgment.

For the foregoing reasons I have concluded that to grant petitioner an order of this court for her support according to respondent's means would, upon all the evidence, be tantamount to awarding her indirectly what she was denied by the Supreme Court upon identical facts and, that, regardless of the applicability or inapplicability of section 137 of the Domestic Relations Court Act, such an order would be contrary to principles of res *judicata* and orderly procedure.

However, this finding that the facts do not warrant a present order of this court for support of petitoner according to respondent's means is without prejudice to petitioner's right to commence a new separation action in the Supreme Court, if she be so advised, either upon the existing facts or after a *bona fide* offer of reconciliation and a rejection of such offer by respondent, and, also, with leave to move for a further hearing in this court if and after such offer will have been made and rejected, at which time the question of the *bona fides* of any such offer would be considered.

It remains only to determine whether any order should be made at this time upon the theory that otherwise petitioner would be in such current need as to require home relief assistance and be eligible therefor if a widow. On that phase respondent's reply brief comments: " The position of the respondent herein is that if the petitioner is likely to become a public charge he does not want to take the position that he is not willing to pay her such an amount each week as will keep her from becoming a public charge."

The rental from the lower floor apartment of premises 100 X Street is just about enough to cover current carrying charges of the building, whereby petitioner is provided with a *rent free* dwelling place; but she lacks cash or liquid assets for food and other essential needs, for there can be no doubt that she will collect no compensation as substitute teacher during the school summer vacation period, and she appears to have no other present source of income. A sale or mortgage of the realty or installing a tenant in the upper floor and petitioner's seeking living quarters elsewhere would require time, and any such plan might well prove a penny-wise-pound-foolish policy for both parties, inasmuch as the realty at least provides petitioner with an abode and the additional cost of raising a mortgage and paying interest thereon might soon lead to loss of the property by foreclosure.

I have therefore concluded to make an order, on a public charge basis, in the sum of six dollars a week, beginning as of May 21, 1942, to tide petitioner over until at least the autumn.

Inasmuch as today's order rests solely upon a public charge basis, petitioner is under duty to seek other employment and not merely

await the uncertainty of further calls from the board of education. With her schooling she should be able to find within a reasonable period some other kind of gainful occupation in view of the existing demand for clerical and like services.

Today's order is entered in final form, so that it may be the subject of appeal by either party. However, it is also subject to modification upon application pursuant to the customary rules and practice of this court governing modifications of support orders and, in any event, may be reviewed, at the request of either party, by me or other justice then presiding, after October 1, 1942, in the light of the then board of education situation, any interval offers of reconciliation, and petitioner's procurement of other work. Upon any such later hearing petitioner should be prepared to show specifically what effort she has made to procure gainful occupation, such as, for example, registration with New York State Employment Service (Commercial, Clerical, Sales and Professional Division), 10 East 40th Street, New York City.

For the foregoing reasons, the court finds that respondent is chargeable with support as alleged in the petition, upon a public charge basis only, and respondent is hereby ordered and directed to pay into this court the following sums: — (1) on or before July 16, 1942, the sum of fifty-four dollars as the aggregate of the weekly instalments of six dollars respectively payable, retroactively, as of May 21, May 28, June 4, June 11, June 18, June 25, July 2, July 9 and July 16, 1942; (2) the sum of six dollars weekly each and every week thereafter, beginning on July 23, 1942. Such payments shall be made until further order of the court, subject, however, to the right of either party to move for modification in accordance with the express provisions hereinbefore set forth.

Notice shall be given to the parties pursuant to the sub-joined direction.