" Maria Salvatore ", Petitioner, v. " Antonio Salvatore ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Queens County, July 9, 1945.

* The opinion as filed sets forth the true names of all parties, but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act.

*Angelo M. Ferri* for petitioner.

*Mac C. Berman* for respondent.

SICHER, J. There is presented a novel phase of the recurrent question of the precise meaning and scope of subdivision 4 of section 137 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482), which reads: " After final adjudication by the supreme court denying alimony in a separation action, if in the opinion of the family court the circumstances of the parties have changed, or if it is shown to the satisfaction of the family court that the petitioner is likely to become a public charge, the family court may entertain a petition for support."

The parties were married on January 13, 1944. Already on August 16, 1944, the wife had left the husband and shortly thereafter instituted in the Supreme Court, Queens County, an action for separation on the grounds of cruel and inhuman treatment and failure to provide, the trial of which action terminated in an April 30, 1945, judgment for the husband on the merits (N. Y. L. J., April 21, 1945, p. 1527, col. 3).

Then, on May 3, 1945, the wife filed in this court a petition alleging that she " is without funds, is dependent upon respondent for support, and is likely to become a public charge ".

That is the sole ground asserted.

There is no claim that during the brief interval since the adjudication by the Supreme Court " the circumstances of the parties have changed ", whatever may be the exact implications of those statutory words. (See " *Kenneson* " v. " *Kenneson* ", 178 Misc. 832, 836, 842; *Cipriani* v. *Cipriani,* 44 N. Y. S. 2d 486, 488, 489.) Thus, for example, this is not the case of a wife recanting after failure of her separation action and in good faith promptly offering to return to a husband who rejects such overture. (See *Silberstein* v. *Silberstein,* 218 N. Y. 525; *O'Leary* v. *O'Leary,* 256 App. Div. 130; *Harlow* v. *Harlow,* 123 Misc. 53; *Brauch* v. *Brauch,* 142 Misc. 464; cf. " *Kenneson* " v. " *Kenneson* ", *supra,* pp. 838, 839.)

Nor is there here applicable subdivision (6) of section 92 of the Domestic Relations Court Act, which empowers the Family Court " To make an order for support of a wife by the husband, even though she may have left the home, in cases where the husband's conduct or condition or his cruel or inhuman behavior made it unsafe, improper or undesirable for her to continue to live with him." Any such claim of justification for petitioner wife's departure would be precluded by the Supreme Court's recent adjudication of that identical plea. (*Matter of Collins* v. *Collins,* 245 App. Div. 612, 614; see " *Kenneson* " v. " *Kenneson* ", *supra,* pp. 837, 838.) That Supreme Court judgment makes it the law of this case that petitioner is not justified in refusing to live with respondent. (See *Matter of Chandler* v. *Chandler,* 241 App. Div. 390, 391, and *Cipriani* v. *Cipriani, supra,* p. 488; cf. *Rochester General Hospital* v. *Ingstrum,* 164 Misc. 148, 149.)

Instead, the situation here is one where petitioner wife persists in her overruled demand for separate maintenance while respondent husband continues to hold open to her the door of the marital home and is willing and able to provide for her there.

Accordingly, the sole relevant issues of fact are: (1) whether petitioner is without means of sustenance and in danger of becoming a burden on the public; (2) whether respondent's offer is made in good faith and would be performable if accepted; and (3) respondent's financial condition, for its bearing on issue (2) and, also, for completeness of the record in the event of an appeal from today's order dismissing the petition.

Fact issue designated (2) involves the basic question of law whether, if petitioner wife be destitute and without means of sustenance outside the marital abode but respondent husband

is in good faith willing and able to provide for her there, subdivision 4 of section 137 of the Domestic Relations Court Act contemplates that he may, nevertheless, be ordered to furnish, or contribute towards, her support elsewhere in exoneration of the public purse.

Since a support order in any amount would in effect grant to petitioner at least part of what the Supreme Court had just wholly denied, this court should, of course, dismiss the petition unless constrained by the legislative fiat in subdivision 4 of section 137 of the Domestic Relations Court Act and the public policy thereby expressed.

Convictions of the husband as a " disorderly person " under criminal statutes predicated on abandonment of a wife allegedly likely to become a burden on the public have been frequently reversed on the square ground that the accused was willing, able, and offered in good faith to provide for such wife in a joint home. (*People* v. *Pettit et al.*, 74 N. Y. 320; *People ex rel. Feeney* v. *Dershem,* 78 App. Div. 626; *People ex rel. Demos* v. *Demos,* 115 App. Div. 410; cf. *People ex rel. Mueller* v. *Mueller,* 164 App. Div. 386.) However, those statutes, being penal, were subject to strict construction, and decisions thereunder are not necessarily determinative of the question whether subdivision 4 of section 137 of the Domestic Relations Court Act may not constitute a subsequent mandate of the Legislature for a contrary conclusion in a civil proceeding (see *Matter of Kane* v. *Necci,* 269 N. Y. 13) under the Domestic Relations Court Act of the City of New York.

No case on all fours has been cited or discovered. The answer must be sought in the reasoning and language of opinions dealing with analogous, although distinguishable, factual situations in proceedings under the Domestic Relations Court Act of the City of New York and the logic of decisions construing prior and current criminal statutes defining and implementing the support obligation inherent in the marital relationship.

No useful purpose would be served by a detailed narrative of the evidence in the case at bar. Suffice it to state certain salient facts in addition to those already mentioned and to indicate the conclusions of fact reached and the principles of law applicable thereto.

The marriage of the past-middle-aged parties was one of convenience, described as follows in Supreme Court Justice CORTLAND A. JOHNSON's opinion filed with the separation action judgment (N. Y. L. J., April 21, 1945, p. 1527, col. 3, *supra*): " * * * the parties were married in January, 1944, and

lived together until August 16, of the same year, when the plaintiff left the defendant. The defendant had been previously married. His first wife died in November, 1943, after a long and painful illness. From 1941 until the death of the first wife in 1943, the present plaintiff had lived as a tenant in the same house with the defendant and his wife, occupying with her own daughter a separate apartment therein. During the illness of the first wife plaintiff was very helpful in caring for her and in helping about the household and appears to have been in every respect a good neighbor. The defendant has a son now about 14 years of age. Apparently the need of someone to care for his household on the defendant's part and the hope of security on the plaintiff's part prompted their marriage, which was bitterly objected to by the plaintff's married daughter with whom the plaintiff had lived until the time of the marriage.

" There was evidence which might lead to the conclusion that the plaintiff had believed the defendant to be in much better financial circumstances than turned out to be the fact. Howsoever this may be, it is a fact that she did leave the home of the defendant. In my opinion the evidence adduced fails to support either cause of action. Judgment for the defendant on the merits * * *."

Two hearings in this court manifested petitioner's aggressive acquisitiveness and self-centered disregard of her marital obligations, on the one hand, and, on the other, respondent's continued need and desire for her presence, if only as housekeeper.

Obviously, any offer of reconciliation after a bitter separation action should be vigilantly scrutinized (cf. *People ex rel. Feeney* v. *Dershem,* 78 App. Div. 626, 627, *supra,* and *People* v. *Paaschen,* 105 Misc. 417, 422, 423); the court must be circumspect to determine whether any such offer comes within the category of merely formal overtures " not spontaneous or conciliatory in their character, but made under the advice of counsel as part of the strategy of a law suit * * *." (*Bohmert* v. *Bohmert,* 241 N. Y. 446, 453.) And, doubtless, the number of Family Court cases of bona fide willingness of the husband to take back the wife after dismissal of a separation action will be small, and, even rarer, cases after entry of an affirmative judgment in his favor without alimony. But the particular facts in the instant proceeding justify the finding, hereby made, that this respondent is sincerely willing and able to maintain petitioner in the marital home and that her refusal to return violates her legal duty.

Nor has petitioner satisfactorily sustained the burden of proof that she is likely to become a public charge if she persists in remaining away from respondent's home. True, her physical condition, age and work inexperience make doubtful her ability to procure and perform gainful employment, even under prevailing labor market conditions. But grave suspicion exists that she still has actual control of jewelry donated by respondent, and, although its market value was not shown, the items exhibited appeared to be of substantial worth, at least sufficient to induce alleged advances totaling about $800 from petitioner's brother-in-law and to constitute potential assets still. Moreover, both during the ten years before her remarriage and since the separation from respondent, petitioner has lived with a married daughter who opposed such remarriage. True, an adult son had also contributed to petitioner's maintenance before the war, and for two years up to May, 1944, she received through him under the Servicemen's Dependents Allowance Act of 1942 (U. S. Code, tit. 37, § 201 *et seq.*) an award of $60 a month, which, however, ceased upon the son's then marriage (although, perhaps, now reinstatable to the extent of $37 a month). Under the particular circumstances petitioner's kin who sustain, and perhaps encourage, her abandonment of respondent may be fairly expected to provide for her within the clan.

Accordingly, dismissal of the petition might be predicated on the single ground of failure of proof that petitioner is so destitute at this time as to require public assistance outside respondent's home. But today's dismissal will be based also on the broader ground that a wife whose husband is genuinely willing and able to maintain her in the joint home is not a petitioner " likely to become a public charge " within the. contemplation of subdivision 4 of section 137 of the Domestic Relations Court Act.

Unquestionably, the Domestic Relations Court Act of the City of New York, originally enacted by chapter 482 of the Laws of 1933, broadens the protection of the public purse beyond the indemnity provided for in the former section (§ 74) of the Inferior Criminal Courts Act (L. 1910, ch. 659) repealed and replaced by such Domestic Relations Court Act.

In an illuminating opinion (*Gilguin* v. *Gilguin*, N. Y. L. J., May 2, 1935, p. 2249, col. 3) then Presiding Justice JOHN WARREN HILL traced the gradual enlargement of the statutory support obligation of husbands, culminating in the creation, by section 137 of the Domestic Relations Court Act,

of a duty, unknown to the common law, to support a wife otherwise actually, or likely to become, a burden on the public even though the husband had been awarded a judgment of separation without alimony. That clear mandate of section 137 of the Domestic Relations Court Act is predicated on the principle that, regardless of the wife's fault, as between the community and the husband, the burden of her support falls primarily upon him. And in that respect the Domestic Relations Court Act enlarges the public interest jurisdiction of the Domestic Relations Court of the City of New York beyond the statutory matrimonial litigation jurisdiction of the Supreme Court of the State of New York. For, if a judgment of separation without alimony has been granted to a husband, Special Term is ordinarily without power to amend such judgment by later incorporating direction for alimony on the ground that otherwise the wife is then, or would become, a public charge. (*Ross* v. *Ross*, 290 N. Y. 887; *Waring* v. *Waring*, 100 N. Y. 570.)

The constitutionality of section 137 of the Domestic Relations Court Act was established by *Matter of Curry* v. *Curry* (275 N. Y. 553). And it is now the settled practice to enter against the husband of a wife at fault, even after her affirmative defeat in a separation action, a Family Court support order within the limits of a public assistance budget allowance and in discharge of the husband's statutory duty to indemnify the community against the burden of her public charge support. (See *Gilguin* v. *Gilguin, supra,* N. Y. L. J., May 2, 1935, p. 2249, col. 3; *Anonymous* v. *Anonymous,* 20 N. Y. S. 2d 514; *Matter of Aronowitz* v. *Aronowitz,* 159 Misc. 103; " *Kenneson* " v. " *Kenneson* ", 178 Misc. 832, *supra; Cosgrove* v. *Cosgrove,* 23 N. Y. S. 2d 586.) But in no such instance was there any offer or intimation of support in the husband's home; such an offer is obviously improbable where the husband has procured an affirmative judgment of separation and the demand for a Family Court order comes after long estrangement suddenly and at the instance of the Department of Welfare of the City of New York. Consequently, every reported case of an order under subdivision 4 of section 137 of the Domestic Relations Court Act lacks the essential distinguishing feature of respondent " Antonio Salvatore's " willingness and ability to provide for petitioner " Maria Salvatore " in the marital home. So, it is logical to apply to this particular civil proceeding the language and reasoning of the Court of Appeals in *People* v. *Schenkel* (258 N. Y. 224), even though that opinion dealt with a criminal prosecution

under subdivision 1 of section 889 of the Code of Criminal Procedure. For, in unanimously affirming the conviction, the Court of Appeals held that the evidence showed that the husband had failed to provide for his wife and " supported an inference that his home had been closed to her; and he produced no evidence to show that he offered or was willing to support her in a home where she could reside." (Second headnote.)

Apposite is the following language of the opinion (pp. 226, 228): " ' It is the duty of the husband to support his wife, but he is not bound to support her away from his home, even though such home may be disagreeable to her.' (*People ex rel. Comrs. of Charities* v. *Cullen,* 153 N. Y. 630, 635.) * * * Of course, the statute does not intend to impose upon a husband the duty to provide a separate maintenance for the wife where, expressly or impliedly, he offers and is ready to provide support for her in a joint home. *Then the test of whether there is breach of duty is the same under the statute as at common law where a third party seeks recovery for necessaries furnished to his wife because the husband has failed to support her.* (*People* v. *Pettit, supra*). *If the husband's home is not open to the wife,* then he must provide for her support elsewhere * * *." (Italics supplied.)

It is well-established law that " Incompatability of temper is no ground for separation in New York. The misery arising out of domestic quarrels does not justify a termination of the legal rights and duties of husband and wife " (*Smith* v. *Smith,* 273 N. Y. 380, 384; see, also, *Averett* v. *Averett,* 189 App. Div. 250, 252; *Schechter* v. *Schechter,* 267 App. Div. 138; *Straub* v. *Straub,* 208 App. Div. 663); and marriage imposes upon a wife reciprocal obligations in exchange for support. Surely, subdivision 4 of section 137 of the Domestic Relations Court Act is not to be so construed as to permit a wife to leave the home under circumstances not entitling her to a judgment of separation and then to vouchsafe her, by indirection, separate maintenance through the device of a " hunger strike " application to the Department of Welfare of the City of New York and an aiding petition under subdivision 4 of section 137 of the Domestic Relations Court Act. Sound policy forbids such an interpretation.

Whether, in the hypothetical case supposed, the Department of Welfare of the City of New York would have a right of action for reimbursement under section 101 of the Social Welfare Law is a matter not within the jurisdiction of this court and, therefore, not considered.

For the foregoing reasons the petition is hereby dismissed.

However, such dismissal is, of course, without prejudice to the filing of a new petition when and if the requisite jurisdictional facts arise out of future events.

Notice shall be given to the parties pursuant to the subjoined direction.