"HILDA STERNAU", Petitioner, v. "THOMAS STERNAU",
Respondent.*

Domestic Relations Court of the City of New York, Family Court,
Queens County, February 3, 1947.

*John J. Bennett, Jr., Corporation Counsel* (*Ida Cassasa* of
counsel), for petitioner.

*James E. Doherty, Jr.,* for respondent.

SICHER, J.  Upon the facts hereinafter set forth, this proceeding is hereby marked "Reserved Generally" pursuant to Family Court Rule XXIV, viz.:

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

" (a) There may be marked ' Reserved Generally ' any proceeding in which:  *  *  *  (2) As the result of petitioner's *  *  * action (including recourse to the Supreme Court of the State of New York or other forum of competent jurisdiction), it appears to the Court that petitioner is no longer interested in the proceeding or entitled to continue it;  *  *  *
(b) Each proceeding within any foregoing category may be marked ' Reserved Generally ' with the intent that it continue dormant until the Court, on material change of circumstances or for other just cause, permit the proceeding to be prosecuted by restoring it to a Day Calendar at any time on proper request of a party or on the Court's own motion.

" (c) The effect of marking a proceeding ' Reserved Generally ' shall be to vacate any support order  *  *  * ; also to cancel arrears, when, if and as expressly directed.

" (d) Notwithstanding any of the foregoing provisions each adjudication of marital status,  *  *  * and of respondent's chargeability for support shall continue binding and unaffected by a ' Reserved Generally ' direction, subject, however, to the right to show by competent evidence intervening material change of circumstances." (Bender's Court Rules, 1947, pp. 371–372.)

The parties were duly married in New York City on August 30, 1942, and are the parents of one child, " Amelia ", born February 9, 1944.

Respondent served in the United States Army from October, 1943, until February 22, 1946, and was overseas from July, 1944, until shortly before his honorable discharge with a 10% disability from amoebic dysentery, for which he has been collecting a pension of $11.50 per month.

The parents had maintained a separate apartment until respondent's induction in 1943, when petitioner moved into her parents' home. She, and the child from birth, have remained there continuously since. Upon respondent's discharge he went to live with his wife and child in that home, and resided there until July 1, 1946.

Petitioner suffered a miscarriage in June, 1946.

On August 12, 1946, she filed in this court a petition for an order for support of herself and the child. But the proceeding was that day marked " Reserved Generally " on the Intake Section officer's report of an adjustment and contemplated reconciliation.

However, already on September 16, 1946, petitioner returned to court; the proceeding was thereupon reopened; hearings were held before me on October 1 and October 2, 1946; and I made on the petition the following indorsements:

" Oct. 1, 1946. Petitioner and respondent. Attorney for respondent. Asst. Corporation Counsel Cassasa for petitioner. Marriage and birth and paternity of child conceded. Testimony taken in part. Adjourned to 9:45 A.M. on Oct. 2, 1946 for attendance of petitioner's parents.

" Oct. 2, 1946. Petitioner and respondent. Petitioner's parents. Same attorney for each party. Testimony concluded. Decision reserved. Temporary order without prejudice $18.00 a week beginning Oct. 7, 1946."

No useful purpose would be served by reciting the evidence developed upon those hearings; if either party or his or her attorney in the separation action so desire, a transcript of the stenographer's minutes may be furnished pursuant to subdivision (d) of Family Court Rule XXXV, which provides:

" The official stenographer may furnish a transcript of the minutes of any hearing to a party to a proceeding or the attorney of record therein upon payment of fees but not until after submission of such transcript to the trial Justice.

" No transcript of minutes shall be furnished to any other person, official or corporation, except by order of the trial Justice or Presiding Justice." (Bender's Court Rules, 1947, p. 374.)

For the purpose of this memorandum, suffice it to state that petitioner did not show by a fair preponderance of the evidence a right to support under subdivision (1) of section 92 of the New York City Domestic Relations Court Act (L. 1933, ch. 482), i.e., in accordance with respondent's " means and station in life " (*Harding* v. *Harding,* 203 App. Div. 721, affd. 236 N. Y. 514; cf. *Garlock* v. *Garlock,* 279 N. Y. 337, 340). Instead, upon the evidence presented (including the demeanor of the parties) petitioner would be entitled to a support order of this court only on a " public charge basis "; that is, respondent's duty in respect of petitioner wife personally would be solely the minimum obligation of indemnifying the community against the burden of her support. And such evidence would not have justified a finding that petitioner wife then was, or was likely to become, to any extent a " public charge ". Nevertheless, regardless of the fault of either parent, concededly " Amelia " is entitled to support by the father in an amount measured by her needs in relation to his ability to provide and station in life (see " *Johnston* " v. " *Johnston* ", 177 Misc. 618, 623; *Prindle* v. *Dearborn,* 161 Misc. 95, 99; *Schacht* v. *Schacht,* 187 Misc. 461). Accordingly, on October 2, 1946, was entered a *temporary* order for deposit in this court of the sum of $18 a week (beginning October 7, 1946),

based on respondent's then net earnings of $42.25 a week plus two meals daily and a veteran's disability pension of $11.50 per month.

Only a temporary and not a final order was entered, partly in the hope that the seeming attachment of the parents to the attractive child might still persuade petitioner to accept respondent's offer to set up a home for her and the child apart from the petitioner's parents; partly because it was indicated that respondent might re-enter a veterans' hospital for further treatment in combination with a job there, at a compensation not presently determinable; and partly because I wished to accompany any final order with a written memorandum for guidance of the justice presiding upon any subsequent hearing in this court. Pressure of current matters deferred the preparation of such memorandum before petitioner had begun in the Supreme Court, Queens County, on December 3, 1946, an action for separation on the ground of cruel and inhuman treatment, and service of the summons and complaint was accompanied by affidavits and notice of motion for a *pendente lite* alimony order of $25 a week.

In " *Varney* " v. " *Varney* " (178 Misc. 165, 170–171) I had occasion to comment: " Of course, filing a petition in this court does not estop a wife from later seeking in the Supreme Court a decree of separation or divorce or annulment; quite properly, she may prefer a court of record determination of the matrimonial status which would be broader and entitled to wider recognition than a mere support order of this statutory court of limited jurisdiction. However, she could commence and prosecute such a Supreme Court action without asking for a *pendente lite* order for alimony or maintenance therein and rely upon the prior Family Court support order until entry of the interlocutory or final decree in the Supreme Court. And under such circumstances the Family Court order, like an analogous order of a Children's Court, would continue in full force during the pendency of the Supreme Court action * * *. For, the right to apply for alimony in a matrimonial action ' * * * is a privilege incidental thereto. It is not obligatory on the wife to make such application, and unless she does so that issue is not before the Supreme Court. * * * ' * * * However, petitioner in the matter *sub judice,* not content with the support order of this court (eight dollars a week, plus two dollars on arrears) moved in the Supreme Court action for a *pendente lite* order of eighteen dollars a week; and by thus speculating on the chance of a higher award from the Supreme Court,

she abandoned the Family Court as the forum for her support pending the separation action." (Citing *Magner* v. *Magner*, 144 Misc. 740; *Matter of Magner* v. *Smyth*, 144 Misc. 840, and *Rosenberg* v. *Rosenberg*, 241 App. Div. 411. Cf. *"Horner"* v. *"Horner"*, 184 Misc. 989; affd. *sub nom. Matter of Hartstein* v. *Hartstein*, 269 App. Div. 770.)

Under date of December 25, 1946, respondent wrote to the investigating probation officer that the motion for temporary alimony had been adjourned pending negotiations between the attorneys. But on January 22, 1947, Supreme Court Justice FROESSEL rendered the following decision on that Supreme Court action *pendente lite* motion: " Motion for alimony in an action for separation. The parties were married on August 30, 1942, and have one child three years of age. Upon the record before me and in view of the fact that the defendant is now paying the plaintiff the sum of $18 per week I will make no further allowance, conditioned, however, (1) on the defendant continuing to pay the said sum of $18 per week, and (2) to his placing this case upon the calendar for the first available term. Submit order."

During the interval between October 2, 1946, and December 3, 1946, respondent had substantially complied with the temporary order, although on December 4, 1946, there were book arrears of $36, perhaps attributable to the fact, as stated in respondent's December 9, 1946, letter to this court, that " my wife has taken the case to Supreme Court at Sutphin Blvd. and is suing for legal separation, in a manner that forced me to take legal advice in order to defend my integrity, a process which costs $350—which I do not have at the present time."

For the foregoing reasons the proceeding is hereby marked " Reserved Generally " and any book arrears on the temporary order payments are hereby cancelled, without prejudice, however to petitioner's right to collect under Supreme Court order the sum of $18 a week from whatever date may be fixed by the Supreme Court.

Of course, the above-stated conclusion concerning petitioner's failure of proof in the proceedings in this court would not be *res judicata* in the separation action (*Loomis* v. *Loomis*, 288 N. Y. 222); and it may well be that the Supreme Court judge would reach a different conclusion upon the facts or that additional evidence may be presented.*

If in that separation action a judgment is rendered in favor of the petitioner and respondent be ordered therein to pay a

---

* Supreme Court Justice DALY dismissed the separation action complaint upon the merits after a trial (N. Y. L. J., April 11, 1947, p. 1422, col. 5).

specified sum to the wife or for the child, or both, as alimony or maintenance and thereupon fails to do so, the proceeding in this court may be reopened pursuant and subject to subdivision 2 of section 137 of the Domestic Relations Court Act. On the other hand, if there be entered a judgment dismissing the separation action complaint, any reopening of the proceeding in this court would be subject to the principles discussed in " *Zunder* " v. " *Zunder* " (187 Misc. 557) and " *Kenneson* " v. " *Kenneson* " (178 Misc. 832).

Until further order of this court no remittance shall be made to or received by this court after today. Any *pendente lite* payments contemplated by Mr. Justice FROESSEL's afore-quoted decision should be covered by the Supreme Court order entered thereon. So, any moneys transmitted to this court by respondent before notice of this decision and still at hand upon its filing shall be returned to respondent.

Notice shall be given pursuant to the subjoined direction.