Bernard Newman, J.
The within proceeding seeks support for petitioner and her child.
The parties were married on April 12,1958, and their son was born on April 20,1959. This is petitioner’s second, and respondent’s first, marriage. Petitioner, as the plaintiff, obtained a divorce in New Jersey from her first husband on January 20, 1956.
Petitioner is a relatively young woman. Respondent is an attorney.
After the birth of their son, the parties resided in a three and one-half room apartment in Brooklyn, at a rental of $98.12 per month. Clandestinely, and significantly, petitioner applied for a lease on another apartment for herself and their child on October 4, 1961, and executed a three-year lease for such apartment on October 15, 1961, effective on that date. On December 21, 1961, petitioner moved from the marital abode without advance notice to her husband, taking most of their furniture.
Thereafter, petitioner instituted an action in February, 1962 in the Supreme Court of Kings County for a separation, and applied for temporary alimony and counsel fees. On March 27, 1962 the court rendered its decision referring the matter of temporary alimony and counsel fees to the Trial Judge, and directing *713 the payment of $40 weekly for maintenance of the child only. Subsequently and by consent, that action was discontinued.
Respondent has voluntarily provided a larger figure than $40 a week for petitioner and their child since the discontinuance of the separation action. The precise amounts, however, are disputed.
In brief, neither of the parties established a case of actionable misconduct or abandonment on the part of the other.
In such instance, each party is “ bound to co-operate toward a reconciliation and a resumption of the marital relationship ” (Brownstein v. Brownstein, 25 A D 2d 205, 207; citing Bohmert v. Bohmert, 241 N. Y. 446, 454).
Petitioner offers to return to the marital home. She contends that, quite apart from justification on her part in removing from the marital abode, the subsequent actions of the parties in the nature of attempted reconciliation and condonation, and her offer to return, Avith respondent’s concomitant refusal, constitute a present desertion on respondent’s part.
Of course, petitioner’s offer to return must be “vigilantly scrutinized ” to ascertain whether it is timely made in good faith or is a strategic maneuver.
Many efforts seeking to effect reconciliation of the parties Avere tried, but failed. Thus, over a few years, the parties saw two priests, a marriage counsellor, and a psychiatrist. All fees Avere paid by respondent, and the court believes that several of these efforts were initiated by respondent. Some of these attempts were made in the Fall of 1960, before the December, 1961 “separation” — several other attempts followed the “ separation ”. In point of fact, respondent introduced in evidence several checks in payment for the psychiatric and marriage counsellor, dated September, November and December of 1963.
During the period of attempted reconciliation, the parties had sexual relations on a few occasions. Nevertheless, petitioner cannot prove a resumption of any regularity of such relationship. “ Cohabitation betAveen the parties of itself is insufficient. * * * It must be a reconciliation which restores the former relations of the parties”. (Peer v. Peer, 20 Misc 2d 878, 879). Plainly, the parties never resumed their “ former relations ” as envisaged by the Peer case. Parenthetically, in the separation action, respondent had suggested a resumption of the marital status.
The court is clear that petitioner has failed to show sufficient actionable grounds to justify her removal in 1961. And it cannot l>e said that respondent’s conduct Avas tantamount to a desertion.
Moreover, during the interval of their attempted reconcilia *714 tion, petitioner signed a three-year lease on August 26, 1964, commencing October 1,1964, for two occupants (self and child). Of course, standing alone that fact was not crucial. Nonetheless, this second lease executed by petitioner, is instructive and reveals her state of mind at the time.
It is difficult to avoid the conclusion that petitioner’s offer to reconcile is not bona fide. The short answer is that petitioner simply had utilized a strategic maneuver.
The authorities cited by petitioner fail to square the settled law with the fact presented here. Thus, it is not the husband’s ‘1 duty to pay amorous court to a rebellious and unrepentant wife to induce her to return ”. (Bohmert v. Bohmert, 241 N. Y. 446, 452, supra, cited in Solomon v. Solomon, 290 N. Y. 337). The Solomon case, relied on by petitioner, does not support her contention.
RESPONSIBILITY AND ECONOMIC PHASES
Where the marriage relationship continues, without affirmative relief to either party, our legislative policy and court decisions uniformly emphasize a deep-rooted doctrine that “ the obligation of a husband to afford support to his wife continues as long as the marriage relation is not dissolved or limited by a decree of divorce or separation ” (People v. Schenkel, 258, N. Y. 224, 226; Anonymous v. Anonymous, 19 N. Y. S. 2d 953, 954).
Furthermore, the recent comprehensive Brownstein decision states (25 A D 2d 205, 209, supra): “ the State has an abiding interest in the preservation of a normal family relationship between them and with their offspring. The separation of spouses is not to be encouraged by an award of separate maintenance to the wife where, voluntarily and without justification, she maintains a separate home. Public policy requires that the discretion of the court to award separate maintenance to''a wife be exercised in the light of these considerations”; and also, “ The married woman, separated from her husband, should be-encouraged, if consistent with her capacities and obligations to her children and family, to devote her energies to their full reach to make herself economically useful. So, also, policy considerations suggest that an award of alimony to a wife, living separate by choice, should be measured largely by her need for support in the light of her resources, her earning capabilities and her farnily obligations. (See Phillips v. Phillips [1 A D 2d 393, affd. 2 N Y 2d 742]; Brody v. Brody, 22 A D 2d 646; Doyle v. Doyle, 5 Misc 2d 4).”
Petitioner, most certainly, is not “ industrially incapacitated ”. Surely, this lady can obtain employment. And as stated in Brownstein (p. 208): “The wife’s claim for support is not *715 considered solely on the basis of her husband’s ability to pay. No wife is ‘ entitled to share of her husband’s income as such ’ ”.
Continuing, however, the court then discussed (p. 209) in depth the “ right of the defeated wife to separate maintenance ”, and the appropriate application of the recent enactment of section 236 of the Domestic Relations Law which (p. 207) “ newly conferred upon the Supreme Court the power to require a husband to provide for the support of a wife who loses her matrimonial action. (See Insetta v. Insetta, 20 A D 2d 544) ” Justice Eager, writing for the unanimous court concerning (p. 209) ‘ ‘ the right of the defeated wife to separate maintenance ’ ’, laid down this idealistic yet realistic guideline (p. 210): “At present, the plaintiff wife, having custody of the children of the marriage, will be expected and required to devote a considerable portion of her time to their care, guidance and well-being. Naturally, she will be so inclined and a furtherance, so far as possible, of a normal mother and child relationship should be encouraged. She should not be compelled to work to the detriment of her children, and defendant, a man of considerable wealth, who has the primary obligation to support and maintain the children, should contribute to the support of his wife to the extent necessary to permit her to fully enjoy her maternal rights and to completely fulfill her parental obligations. To this extent, without regard to the cause of the separation of the parties, the plaintiff wife, in the best interests of the children and derivatively on the basis of their rights, is entitled to an award.”[1] (Cf. “Judicial Discretion in Matrimonial Action ” by Justice Bernard S. Meter, 38 N. Y. State Bar J., 119, April 1966; and “Practice Commentary” by David D. Siegel, McKinney’s Cons. Laws of N. Y., Book 14, Domestic Relations Law, § 236).
The rationale of section 236 of the Domestic Relations Law and the salutary principle regarding support as enunciated in Brownstein appear to be applicable to a parallel situation in the Family Court. Consequently, the Brownstein ease must be regarded as persuasive authority in reaching a decision in the instant proceeding. This court readily predicates its decision on the pioneering Brownstein doctrine uniquely applicable *716 to the legislative intent and spirit of the Family Court background— as sound juridically and sound socially.
In Brownstein, the Appellate Division construed the discretion granted under section 236 of the Domestic Relations Law, to provide for support of a wife with due regard to the 11 circumstances of the case and of the respective parties ”. The court held (p. 208) that “ Absent actionable misconduct or abandonment, however, the cause of a separation of the spouses and fault inducing or incidental thereto ought-not to be and, under present day thinking, are not material factors in determining whether a husband should provide support for his wife; and there is little satisfaction in any endeavor to pinpoint the cause of marital discord.” (Italics mine.)
It should be noted that section 412 of the Family Court Act, dealing with the duty of a husband to support his wife, provides that a husband may be required to pay a fair and reasonable sum, as the court may determine “ having due regard to the circumstances of the respective parties.”
The language of section 412 of the Family Court Act and the new section 236 of the Domestic Relations Law are thus almost identical in scope. In both sections the court is admonished, in precise wording, to exercise its discretion with “ due regard to the circumstances of the respective parties.” The omission in section 412 of the Family Court Act of the reference to the ‘[1] circumstances of the case ’ ’, found in section 236 of the Domestic Relations Law, is of no significance. In all instances, the court must consider that the sections are in pari materia, and should be construed similarly. Thus the Family Court, in assessing the duty of a husband to support his wife, should apply the same criteria set forth in Brownstein (p. 208), i.e., “ absent actionable misconduct or abandonment, however, the cause of a separation of the spouses ” ought not "to be a material factor in determining whether the husband should be made to provide for his wife.
It is not necessary to ascribe the precise reasons for the marital discord which exists between the parties. However there was, in this court’s judgment, no actionable misconduct or abandonment on the part of the wife. Hence, the circumstances of the case warrant some award of support to petitioner under section 412 of the Family Court Act on a means basis.
As to the circumstances of the parties, the evidence shows that petitioner is capable of obtaining employment; and that respondent’s gross income before expenses and income taxes approximates $15,000. Respondent’s annual expenses approximate $8,000,
*717 Accordingly, the court, as required by section 412 of the Family Court Act, finds after a hearing that the husband in the present situation is chargeable under section 412 of the Family Court Act with the support of his wife, and is possessed of sufficient means to pay $45 per week for her support, and $30 per week for their child’s support (which order is effective 10 days after date hereof). Having reached that conclusion, the court need not consider whether, in any event, the husband would be liable for some measure of support to prevent petitioner from becoming a public charge.[2]
VISITATION
Happily, both parties here agreed that neither parent has attempted to undermine the other in the eyes of their child.
The temporary order of the Supreme Court granted visitation to respondent from 3:00 p.m. Saturday to 3:00 p.m. Sunday. Originally the Family Court, on a temporary basis, set visitation for alternate week ends from 5:00 p.m. Friday to 6:00 p.m. Sunday, and on the alternate Sundays from 10:00 a.m. to 4:00 p.m. This visitation schedule will be adopted, with the addition of custody to respondent for three weeks in the Summer of each year, commencing with August 1, 1966.
The court will re-examine this schedule, if either of the parties is so advised.
COUNSEL FEES
Counsel for petitioner requests, in his brief, that he be awarded an appropriate allowance. The court is constrained to deny this application, without prejudice, and with the right to counsel to renew such application on proper supporting papers which set forth the usual relevant criteria for fixation of an attorney’s .allowance; or, in the alternative, the making of such an application in court. In either instance, the attorney for respondent may interpose proper papers or argument so that the necessary record is made.

. Parenthetically, in 1942 the Domestic Relations Court, a predecessor of the Family Court, created in 1962, made the prescient observation in “Kenneson ” v. “ Kenneson ” 178 Misc. 832, 836-841, similar to the Brownstein holding construing the recent section 236 of the Domestic Relations Law, that: “petitioner’s unsuccessful separation action would not ipso facto forever relieve respondent of the obligation, assumed upon the marriage, of supporting petitioner ‘ according to his means and station in life’ (Harding v. Harding, 203 App. Div. 721, 722; affd., 236 N. Y. 514; cf. Garlock v. Garlock 279 N. Y. 337, 340).”

. Support on a “ public charge basis ”, which holds the public harmless, has been defined as a husband’s personal duty in respect of supporting his wife as “ the residual minimum obligation of indemnifying the community against the burden of her support” (“Zunder” v. “ Zuncler”, 187 Misc. 557, 560; cf. “Kenneson” v. “Kenneson”, supra; “Salvatore” v. “Salvatore”, 185 Misc. 309; Tell v. Tell, 53 N. Y. S. 2d 94).