CASE 102.—DIVORCE.    ACTION    BY    PEACHIE    B.    GROW
        AGAINST FRANCIS BRECKINRIDGE GROW.—Octo-
        ber 15, 1909.

## Grow v. Grow

Appeal from Garrard Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1.  Divorce—Cruel    and    Inhuman    Treatment—Evidence.—Evi-
    dence held to justify an absolute divorce to a wife on grounds
    of cruel and inhuman treatment.
2.  Divorce—Disposition of Property.—Where, at the time of mar-
    riage, a husband brought to his wife's farm, where they lived,
    $400 in personalty, which if kept separate from his wife's
    property, and loaned at the usual rate of interest, would, at
    the date of their separation, have been worth about $500, he
    should be awarded that sum upon the granting of an absolute
    divorce to the wife with custody of her own property.

W. I. WILLIAMS for appellant.

WM. HERNDON for appellee.

OPINION OF THE COURT BY JUDGE LASSING —Reversing.

This is an appeal from a judgment of the Garrard circuit court refusing to divorce the appellant, Peachie B. Grow, from her husband, Francis Breckinridge Grow. The petition seeking the divorce alleges that they were married in 1904, and that for some time, and particularly during the six months next preceding the filing of her suit, her husband behaved towards her in such a cruel and inhuman manner as to indicate on his part a settled aversion to her, and to permanently destroy her peace and happiness of mind.

The proof shows that each had theretofore been married, and that the defendant is the brother of plaintiff's first husband. By her first marriage she had three children, all boys, and at the date of this marriage these boys were about grown. The defendant, so far as the record shows, had but one child by his former marriage, a girl, who at the commencement of this litigation was about 12 years of age. No children were born of this marriage. The plaintiff at the death of her husband was the owner of a farm of some 115 acres, worth perhaps $7,000, where she and two of her children were living, surrounded by such home comforts as might be expected upon a farm of that size and character. The defendant is shown to have been a man of little means, his entire estate consisting of some $400 worth of personalty. After their marriage they lived upon her farm, the defendant taking the active management and control thereof, and thus matters continued from that time until their separation in May, 1908. The evidence shows that beginning shortly after their marriage the defendant was rude to his wife, frequently speaking to her in a rough, coarse manner, and showed an

utter disregard for her opinions and feelings. He resented any effort on her part to have a voice in the management of her property, and frequently in the presence, not only of their children and their immediate neighbors and friends, but of strangers, behaved towards her in such a manner as to bring the blush of shame to her cheeks and tears to her eyes. He would tell her to shut her mouth, and, according to the testimony of two witnesses, curse and abuse her. When she was not treated in the manner above indicated, he would at times refuse to answer questions which she would ask him and utterly ignored her and her wishes as expressed to him, and, according to many of the witnesses, he seemed to invariably adopt one of two courses toward his wife when in the presence of others, either to speak to her in such a way as to indicate that he entertained an utter contempt for her and her opinions, or else refused to recognize or speak to her at all, when both the occasion and her conversation required that he should speak. All of the witnesses for both plaintiff and defendant testify that he was a rough, coarse man, who seemed to think it smart to "cut monkey shines," as the witnesses describe it.

The most that is offered in the record in palliation or defense of his conduct is the testimony of some of his witnesses who say that they were occasionally at the Grow home and saw no evidence of misconduct on his part, although they, too, testified that he had a rough, curt way of talking. Some of them testified that he had always talked and acted in this way. From this it is argued that his wife must have known when she married him what kind of a man he was, and been familiar with the fact that he had a rough, curt way of speaking, and for this reason that she

may not now complain.  To this line of argument, however, we cannot subscribe.  She may have regarded him as a diamond in the rough, but she certainly would not have married him had she thought or even dreamed that he would have treated her in the way and manner in which the record shows he has habitually done since their honeymoon began to wane.  The fact that a man has a rough exterior and a plain, blunt way of speaking does not justify the conclusion that he is lacking in those finer attributes, affection, consideration, and attention, that go to make up the happiness of  every married woman's life.  She had a right to expect that, even though uneducated and rough, he would at least treat her kindly and with that degree of consideration which every wife deserves at the hands of her husband.  In this it appears that she was mistaken, for he did neither, and although she evidently realized soon after their marriage the mistake she had made, she tried to make the best of a bad bargain and get along with him, for, as one neighbor expressed it, "she bore up under his mistreatment better than any one I ever saw," and, although she was frequently put to shame and deeply humiliated by the conduct of her husband toward her in the presence of others, she bore it all with commendable fortitude until finally, when forbearance ceased to be a virtue and she could stand it no longer, she asked the chancellor to relieve her from her unhappy lot.

The bonds of matrimony should not be severed and the home broken up for slight or trivial causes, but no woman should be required to live with a man whose conduct day by day toward her is such as to indicate that he has no respect for her, no consideration for her wishes, and no regard for her feelings.

When he habitually behaves toward her in a rough, rude and insulting manner, humiliates her upon any and all occasions, and without cause is cross, rude and unkind to her, she should not be required to live with him, and this is especially true when this treatment of her and conduct on the part of her husband toward her, as in the case at bar, is shown to have gradually grown worse. During all their married life, as between the plaintiff and her husband, she is not shown to have given him a cross word or to have offered him the slightest excuse to justify him in treating her in the way and manner in which he is shown to have done. On the contrary, it is shown that she has been a kind, considerate, and so far as may be under the circumstances existing, an affectionate wife. An effort is made to show that at times she quarreled with her sons, and particularly one of them, because he was not inclined to take her advice. This conduct on the part of the son may have been, and doubtless was, brought about in a large measure by the example which his stepfather set for him. But even if all this be true, it offers neither justification nor excuse for the defendant's conduct, and has no place in our consideration of this case; our inquiry being confined to the question as to how the plaintiff and defendant behaved toward each other.

We are of opinion that the record abundantly supports the charge that the defendant behaved toward the plaintiff, his wife, in such a cruel and inhuman manner for a period of time covering more than six months before their separation as to indicate a settled aversion on his part toward her. That such conduct as is portrayed by the witnesses was calculated to break her spirits and permanently destroy her

peace and happiness there can be no doubt.  On this showing the chancellor should have granted her an absolute divorce from the defendant, and given her the custody and control of all her property.  The record is very meager as to what property the defendant owned.  It is claimed by his counsel in his brief that it was worth about $400 at the date of their marriage.  Such property as he had he is entitled to have returned to him with its reasonable and fair increase.  Conceding that at the date of their marriage he brought to the place personal property of the value of $400, this, if kept separate and apart from his wife's property and loaned at the usual and customary rate of interest, would at the date of separation have been worth about $500, and we are of opinion that the chancellor should have awarded to the defendant $500 to be paid by the plaintiff out of such stocks and personalty as were on hand at the date of their separation, and have awarded all other personalty on the place to the plaintiff.

The judgment is reversed, and cause remanded, with instructions to enter a judgment in conformity with this opinion.