## Gowdy v. Gowdy.

### (Two cases.)

(Decided June 14, 1929.)

(As Modified, on Denial of Rehearing, October 11, 1929.)

**546**

O. B. BERTRAM and ABEL HARDING for appellant.

FRED FAULKNER and W. H. SPRAGENS for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Affirming in part and reversing in part.

The appellee, Hallene M. Gowdy, sued the appellant, David E. Gowdy, in the Marion circuit court for divorce and alimony on the ground of cruel and inhuman treatment. She was granted an absolute divorce, awarded alimony in the sum of $12,500, given the custody of their two children, and an allowance of $60 per month for their support and maintenance; she was further adjudged to recover of the appellant the sum of $565, money loaned to him, and the further sum of $318, money collected by him from a loss by fire on furniture belonging to appellee; and her attorneys were allowed a fee of $500 to be taxed in the costs and paid by appellant. From so much of that judgment as awards alimony and an allowance for the maintenance of the children, and adjudges against him the two sums of money and allows appellee's attor-

neys a fee of $500, David E. Gowdy has appealed. After the original judgment was entered and appellant had indicated his intention to appeal, on appellee's motion therefor, she was allowed the sum of $100 per month pending this appeal. Appellant has prosecuted an appeal from that order also.

The first ground urged by counsel for a reversal is as to the competency of certain testimony. The appellee called the appellant as a witness, and took his deposition as if under cross-examination. His exceptions to this deposition were overruled. He complains of this on the ground that the taking of his deposition, in this manner, was for the purpose of getting into the record incompetent evidence with which to obtain an undue advantage of him and to prejudice his rights. Under section 606 of the Civil Code, appellee had the right to take his deposition as if under cross-examination, and by doing so she waived his competency as a witness. As to this he has no legal ground of complaint. Wilhelm v. Orlamuende's Adm'x, 228 Ky. 719, 15 S. W. (2d) 511.

It is next urged that the testimony is insufficient to authorize the allowance of alimony; or if an allowance of any sum was proper, the amount awarded is excessive.

The parties were married in Lebanon, Ky., on October 30, 1917. At that time appellant was 24 and appellee 21 years of age. He was reared and resided in Taylor county and she was reared and resided in Marion county. At the time of their marriage he was employed in a mercantile establishment belonging to his father in Campbellsville, and he continued in that employment until the latter part of April, 1918, when he was drafted and entered the army. During his absence appellee resided in the home of her parents in Lebanon, where she assisted her father, a photographer, in his business. In this work she earned between $500 and $700 and this sum, with the allowance she received from the government during the time appellant was in the army, she had saved and had in bank when he returned. From this sum it is claimed that she loaned him $516, and with the balance, and the sum of $350 he had given her at the time of the birth of their last child, she purchased the household furniture which was subsequently burned, and for which appellant collected the $318 sued for.

Appellant and appellee are both people of high standing, culture, and refinement. Appellee is shown to

548

be well educated, gentle in her manner, and devoted to her children. Appellant is industrious, of good habits, and possessed of means amply sufficient to maintain his wife and rear his children in more than comfortable circumstances; but the record shows a lamentable state of affairs existing between them for the three or four years next before their separation. Up to that time they had been unusually fond of each other, companionable, and each apparently striving to do his or her part toward the making of a successful home, but shortly after the birth of their last child his manner toward appellee began to grow cold; he became indifferent, his affections waned, and he lost interest in his home and family. What brought this about is not disclosed, other than he seems to have been disappointed that their last child was a girl, when he had so ardently wished for a boy. In the latter part of the year 1922, his father died, leaving him an estate of $15,000. Shortly afterwards he disposed of his mercantile business and purchased a farm near the city limits of Campbellsville, and spent his time there. He began to neglect his wife and children, came home only for his meals, displayed no interest in the wife or children, and spent his evenings to himself. He grew parsimonious with his wife, limited her to an allowance of $4 per week with which to run the house, complained if she employed a servant to assist her, objected to any social activities on her part, and prevented her on more than one occasion from joining a woman's club in her home town. Shortly after their marriage he had given her a Ford coupe, which he subsequently devoted to his farming operations. He then purchased another automobile, but later on objected to his wife driving it, and refused himself to take her and the children out in it because of the expense incident to its operation, and finally refusing to even purchase a license for it for the year 1928.

His indifference and lack of affection for her and interest in his children became so pronounced that appellee was made sick and her health impaired. She developed diseased tonsils; her eyes began giving her trouble. Her doctor advised an operation for removal of her tonsils, and a specialist who examined her eyes directed that she procure glasses. Appellant objected to the removal of her tonsils or to the purchase of eyeglasses. She delayed both until after much suffering, and, still over his pro-

test, she had her tonsils removed and glasses fitted to her eyes. For a long time he refused to pay the bill, but finally did so when he was sued by the doctor who had fitted the glasses.

Despite the fact that he was amply able to provide his wife and children with suitable and proper clothing, she was compelled to make over dresses and hats for herself and the children out of her old clothes.

His desire to rid himself of appellee became so strong that he finally proposed to her that, if she would leave him, he would convey to her the business building in which they then resided and certain household furnishings. She declined the offer, as she says, because even though he no longer had any affection for her, she was willing to endure his indifference and unkindness because of their children and her desire to keep them with the father.

Later on an uncle of appellant died, leaving to him a large sum of money, and according to appellee's testimony, appellant's desire and will to force her to leave him became more pronounced. He renewed his efforts to force a separation; his neglect of herself and children became unbearable. He refused to provide means for her to visit her father and mother unless she would agree to go to them and stay. He refused to provide a small sum of money with which to prepare herself to accompany her father and mother on a visit to her brother in Tennessee when they were giving her the trip.

When her father was taken sick with the illness which caused his death, and was removed to a hospital in Louisville, appellee accompanied him, and remained there two weeks, leaving the children with her mother in Lebanon. Appellant visited Louisville while appellee was there, but failed to call on her or to let her know that he was in Louisville or to inquire as to her father's condition; and during this time never visited his children nor did he make any inquiries concerning them.

The fire which burned her furniture damaged the apartment in which they lived, including the roof. When appellee importuned appellant to repair the roof, stop the leaks, and paint the rooms, he declined to do so, saying it was good enough for him for the little time he spent in it; and when reminded by appellee that she and the children were there continually, it is shown by a disin-

terested witness that he said he did not give a damn for that.

The record is replete with circumstances and conditions going to show his frame of mind and determination to rid himself of appellee; yet, having testified twice, once, as if under cross-examination, and again after appellee had testified, he makes no claim of any act of commission or omission upon the part of appellee which induced or brought about his conduct toward her, except that on an occasion when he had an opportunity to sell the business house where they had their living apartments, she refused to sign the deed and he was unable to make the sale. Appellee meets this claim by saying she agreed to join in the deed if appellant would consent to deposit the money in bank and use it only for the erection of a decent dwelling house on the farm, but he refused to do so.

It is passing strange that if appellee were responsible in the remotest degree for the present condition existing between them, there should not be some person in the small city of Campbellsville who would know it and could so testify. In his own testimony appellant goes no further than to categorically deny the testimony of appellee by answering questions propounded by his lawyer in which the testimony given by appellee is recounted. He does not, however, deny his proposals to appellee to leave him and permit him to divorce her; nor does he attempt to explain why he made them.

The statute under which appellee sought relief provides, among other grounds, for divorce to the wife—"habitually behaving toward her by the husband, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace or happiness." Ky. Stats., sec. 2117.

The cruel treatment therein referred to is not confined to acts of personal violence. Mental anguish, wounded feelings, constantly aggravated by repeated acts of neglect, are as cruel as actual bruises of the person, and that which produces the one is not more cruel than that which causes the other. A wife who has been made to suffer mental anguish from wounded feelings and willful neglect is as competent a witness, and her testimony tending to show these conditions is

just as competent, as is the wife whose body has been bruised by acts of personal violence and who testifies concerning them.

In McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A. (N. S.) 1127, the court said: "Upon the current weight of authority, it may be said that any conduct on the part of the husband or wife which is calculated to seriously impair the health or permanently destroy the happiness of the other is sufficient ground to justify an absolute divorce." To the same effect are Burris v. Burris, 180 Ky. 365, 202 S. W. 906, and Cecil v. Cecil, 200 Ky. 453, 255 S. W. 64.

The proof shows and appellant admits that his stock of goods was of the value of $3,000; between 1921 and October, 1927, he became possessed of property aggregating $58,300. From his mother he received a house and lot which he sold for $900; from his father's estate he received $15,000; from the estate of his uncle he received something than than $36,000; he surrendered life insurance policies, in which his wife was the named beneficiary, for which he received the cash surrender value amounting to $1,100; he collected from fire losses the sum of $1,800. He testified that the total value of all the property belonging to him at the time he testified was $23,500, against which were two mortgage liens aggregating $4,400. Of this total sum he claims that he has spent $40,875 in buying lands, making improvements thereon, and in equipment therefor, including cattle at $1,440, and in a wall case at $800, and a cash register at $860, for use in his store. But, as far as the record shows, he has all this property yet, except the wall case and cash register, and three or four head of cattle, which have died. He claimed to have lost money in a chicken-raising venture, but could not state the amount. He now claims that the land and improvements have greatly depreciated in value. In addition to the property which he is shown to have had, and yet has, the record discloses that he will ultimately receive one-eighth of a trust fund, now amounting to approximately $75,000, established for the benefit of his uncle and aunt, the income from which is to be paid them during their lives. At the time of taking the proof in this case they were each 65 years of age. Considering his interest in this fund, with the property he now has, as we are authorized to do (Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1355, 4 L.

R. A. (N. S.) 909; Griffin v. Griffin, 154 Ky. 766, 159 S. W. 597), and giving due consideration to the claimed decrease in value and losses appellant has sustained, the permanent alimony allowed is not one-third of his estate. This court has frequently approved allowances of alimony equal to one-third of the husband's estate. Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5; Scott v. Scott, 200 Ky. 153, 252 S. W. 1019; Burns v. Burns, 173 Ky. 105, 190 S. W. 683.

The allowances of $60 per month for the maintenance of the two children, when considered in connection with appellant's financial worth, is not unreasonable.

The proof sustains appellee's contention as to the sum of $318, money collected by appellant on the insurance policies covering her burned furniture. This furniture had been purchased by her with her own means; the adjustment was had with her, and the money was paid to her husband for her.

However, as to the sum of $516, adjudged for money loaned to appellant, appellee is the only witness to support this claim. Obviously she was not a competent witness to establish the fact. In view of appellant's denial of the loan and the failure to prove it by competent testimony, it was error to adjudge a recovery; the judgment on this item cannot be sustained.

The allowance of $100 per month to appellee pending the appeal has been superseded. If it had been paid the aggregate amount would have to be credited on the permanent alimony. For this reason, this allowance will be set aside.

The allowance of $500 to appellee's attorneys was made to them eo nomine; they are not parties to this appeal. The court is without authority to consider the objections thereto raised by appellant. However, no allowance to appellee's attorneys will be made for services in this court.

Wherefore, as to the allowance of permanent alimony to appellee, the amount thereof, the allowance for the support and maintenance of the children, and as to the sum of $318 adjudged appellee, the judgment is affirmed. As to the sum of $516 adjudged appellee and the allowance of $100 pending the appeal, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.