## Wheat v. Wheat.

March 21, 1950.

Sidney B. Neal, Judge.

David C. Brodie for appellant.

B. C. Green for appellee.

JUDGE HELM—Reversing.

On January 6, 1948, appellant filed this action seeking a divorce from appellee, custody of their infant son, alimony, maintenance for their child, and restoration of a house and lot in Owensboro. From a judgment dismissing her petition she appeals.

The parties were married July 13, 1940. She is 38 years of age; he is 34. She had been married, has a son 19 years of age by the former marriage. The son is supported by her former husband, from whom she is divorced. The parties lived together in Kentucky and Indianapolis, Indiana, until 1944 when appellee was inducted into the Army. He was discharged May 14, 1946. While he was in the service appellant returned to Owensboro, where her people lived. During his absence she purchased a house at 357 Hill Avenue in Owensboro. After his return from the service she and appellee lived at this home. They have one child, Ronald Roy Wheat, born July 18, 1947.

In her petition she charges that appellee, for more than six months, behaved toward her in such a cruel and

inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness. To support this charge of cruel and inhuman treatment, she shows that appellee, after his return from the service, and especially during the period of her pregnancy, cursed and abused her, would call her a "G—d— fool;" would threaten to do her bodily violence; told her that he would "knock h— out of her;" would tell her that she was ignorant; that she was too ignorant to take care of her child; would say to her before the baby was born that he was "tied" to her then but as soon as that was over he would "check out." He would belittle and humiliate her, not only in the presence of her son and mother, but in the presence of other people. Appellee "drinks;" he was especially overbearing and abusive when he would be drinking. He did not arrange for her to go to the hospital at the time of the birth of the baby; she made the arrangements and secured money to pay her hospital fee. He did not accompany her to the hospital. After the baby was born he continued to curse and abuse her, especially when the baby would cry. Since his return from the service he has been overbearing and abusive, has shown himself dissatisfied with his home and surroundings, has told and shown his wife that he does not care for her.

Since appellee went into the service appellant worked for the local telephone company, earning $40 per week, except for five months before her baby was born. With the financial assistance of her mother, who lived with her, she negotiated the purchase of a house and lot at 357 Hill Avenue in Owensboro. The purchase price was $5800. Appellant's mother furnished $1225; appellant paid $100 and gave her personal note for $500, which she later paid; appellee cashed bonds in the amount of $175, which he contributed to the purchase price. Appellee had $900 which he loaned to his aunt at the time he went into the service. No part of this went into the purchase price of the house. Appellant financed the remainder of the purchase price, $3800, through the Owensboro Federal Savings and Loan Association. The monthly payments were $38; the balance on February 9, 1948, was $2937.98. She made these payments until he returned from the service. Later a second mortgage for $900 was given to appellant's mother. It is still outstanding. The house is a duplex; appellant

rented one apartment and lived in the other. The title to the house and lot is in "Sarah Ware Wheat and J. F. Wheat, her husband, and the survivor of them." Appellant and her husband have not lived together as husband and wife since September 20, 1947. Her son had enrolled at Western Kentucky State College. Appellee moved into his room and has remained there since.

For appellee it is shown that his wife received an allotment while he was in the service; that he helped negotiate with Mr. VanOver for the purchase of the house; that he cashed bonds in the amount of $260 which went into the purchase price. On August 7, 1946, he obtained work as a bus driver in Owensboro. He earns about $50 a week. From June 1946 to July 1947 he made the building and loan payments of $38 per month. During the same period it appears that his wife paid the household expenses, which amounted to more than the building and loan payments. Appellee states that he made a number of the payments in advance. He denies cursing, abusing, threatening, or belittling appellant. He states that he has never refused to support his wife or child since the child was born, but it is shown that he has not contributed anything to his wife's support since September 20, 1947, and the record discloses that on April 5, 1948, appellant filed her motion, after due notice, before the Chancellor to require appellee to pay her $10 per week for the support of their infant son during the pendency of this action, "to which motion the defendant, by attorney, objected;" that on a hearing at which the parties introduced evidence, the court ordered appellee to pay to the appellant the sum of $7.50 per week during the pendency of this action for the support of their infant child, the payments to begin April 17, 1948.

It is shown by Hubert Howard, Secretary and Treasurer of the Owensboro Federal Savings and Loan Association, that on July 18, 1947, there were no payments in advance on the above loan. It is shown by L. E. VanOver, who made the deed to appellant and appellee, that appellant signed a proposal and agreement to buy the house and lot on Hill Avenue for $5800, provided he could arrange terms for $3800. Mrs. Wheat signed it; J. F. Wheat did not. He states that at no time, either on the day of the execution of the deed or prior thereto, did he have any contact with J. F. Wheat

relative to the purchase of this property. Appellee testified that he did not have $900 when he entered the service, and did not send over $300 to his aunt at Scottsville, but a certified copy of an Allen County mortgage shows that that instrument was for $900. Appellee, shown to be mistaken as to these matters, may also have been mistaken as to other matters testified to by him.

It is shown that appellant is a proper person to have the care and custody of the child.

In Grow v. Grow, 134 Ky. 816, 121 S. W. 654, 655, 135 Am. St. Rep. 440, the evidence showed that the husband was rude to his wife, frequently speaking to her in a coarse manner, and showing a disregard for her opinion and feelings. He resented any effort on her part to have a voice in the management of her property. In the presence not only of the family but of neighbors he behaved toward her in such a manner as to humiliate her. He would curse and abuse her. When forbearance ceased to be a virtue she asked the Chancellor to relieve her from her unhappy lot. There we said:

"The bonds of matrimony should not be severed and the home broken up for slight or trivial causes, but no woman should be required to live with a man whose conduct day by day toward her is such as to indicate that he has no respect for her, no consideration for her wishes, and no regard for her feelings.

\*    \*    \*    \*    \*    \*

"We are of opinion that the record abundantly supports the charge that the defendant behaved toward the plaintiff, his wife, in such a cruel and inhuman manner for a period of time covering more than six months before their separation as to indicate a settled aversion on his part toward her. That such conduct as is portrayed by the witnesses was calculated to break her spirits and permanently destroy her peace and happiness there can be no doubt. On this showing the chancellor should have granted her an absolute divorce \* \* \*."

In Gowdy v. Gowdy, 230 Ky. 545, 20 S. W. 2d 170, 172, we said: "The cruel treatment therein referred to (KRS 403.020) is not confined to acts of personal violence. Mental anguish, wounded feelings, constantly aggravated by repeated acts of neglect, are as cruel as ac-

tual bruises of the person, and that which produces the one is not more cruel than that which causes the other." See, 7, West Kentucky Digest, Divorce, Key 27(1).

From the testimony it appears that appellee's chief concern was in establishing his interest in the house and lot at 357 Hill Avenue. Mr. VanOver, real estate dealer, says this house and lot is worth $8000. From the evidence it appears that in March, 1947, the parties were attempting to reach an agreement as to their respective interests in the house and lot. At that time appellee claimed to have $900 in the property. The parties went to the building and loan association; an employee there figured that appellee's interest was "$650, including interest." After the employee made the calculation, appellee said he would take that. From the record it appears that appellee has not contributed anything to the support of appellant since September 20, 1947.

From all the testimony, facts and circumstances of this case, we are of the opinion that the Chancellor should grant appellant an absolute divorce; alimony in the amount of $1000 in a lump sum, with a lien upon appellee's interest in the above-mentioned property; $20 per month alimony until further order of the Circuit Court; the custody of their infant son; $7.50 per week for the child's maintenance from April 17, 1948, until further order of the Circuit Court, and should, in accordance with KRS 403.060(2), restore to each of the parties all property obtained from the other during the marriage and in consideration of the marriage.

The judgment is reversed with directions for the entry of a judgment in conformity with this opinion.