Bertram Harnett, J.
Mrs. Georgina Berlin seeks to divorce her husband Milton because of cruel and inhuman treatment. She does not claim any physical assault. Rather, she claims such abusive treatment as endangers her mental well-being making it unsafe or improper for the marriage to continue. Her husband defends, first, that her complaints are simply bearable irritants of marital life and not grounds for divorce, and, second, that in any event, there can be no divorce based on mental cruelty without a showing that the wife’s physical or mental health has been seriously affected, and for this there must be the supporting testimony of a medical doctor.
Therein lies the case, posing issues fresh to this jurisdiction.
Before going to the facts, it may be helpful to outline the frame of legal reference. Subdivision (1) of section 170 of the Domestic Relations Law provides among the various grounds for divorce: ‘ ‘ cruel and inhuman treatment * * * such that the conduct of the defendant so endangers the physical or mental well being of the plaintiff as renders it unsafe or improper for the plaintiff to cohabit with the defendant ”.
*353 Contested matrimonial decisions are not often easily resolved. The intense variables in the most intricate of all human relationships create levels of complication fundamentally unsuited for legal rules which aim at certáinty. Only the extremes of the matrimonial trouble spectrum are reasonably plain. At one end is the husband who physically beats his wife with conspicuous regularity to her continued objection. This woman would have grounds for divorce for cruel and inhuman treatment. At the other end are the husband and wife who squabble constantly and engage in the psychological games and charades recognizable to many married couples who continue to reside within a generally acceptable relationship. The squabblers would not qualify for a New York divorce for cruel and inhuman treatment. There are jurisdictions which permit divorce for “irreconcilable differences”, for “incompatibility”, or even where the courts simply deem it appropriate (see Burch v. Burch, 195 F. 2d 799; Clark v. Clark, 54 N. M. 364; Sylvester v. Sylvester, 330 Mass. 397; Grow v. Grow, 134 Ky. 816; Reinhard v. Reinhard, 96 Wis. 555. See, also, 24 Am. Jur. 2d, Divorce and Separation; Am. Jur. 2d Desk Book, Doc. No. 125), but these most liberal grounds do not form the existing law in New York, regardless of privately held sociological tenets. Whatever the legislative wisdom, New York divorce policy rests by legislative prescription with .some kinds of statutory standards, or perhaps these are delay obstacles.
But many, maybe most, disputed cases do not involve the wife beaters or the squabblers. They are like the one at bar. They are intermediate cases in the matrimonial trouble spectrum.
“Cruel and inhuman treatment” as generally declared in subdivision (1) of section 170 of the Domestic Relations Law may be paraphrased in its bearing in this case as such conduct which so endangers the mental well-being of the wife as renders it improper for her to cohabit with the defendant husband. The word ‘ ‘ health ’ ’ nowhere appears in the statute, nor does the statute prescribe any presumptions or standards of proof. And, it has been long held in the Appellate Division, Second Department, that since the facts of each case are necessarily different, each requires a result attuned to the human components which constitute that family’s problem. (Tower v. Tower, 134 App. Div. 670.)
In statutory analysis, it is always helpful to search out legislative policy and intent, where plain meaning is challenge-able. In 1966 the New York State Legislature cast aside the State’s venerable divorce pattern and literally rewrote the *354 book. The legislative purpose was manifestly one of reform. The classic statement of legislative intent is the now famous dictum of the Court of Appeals in Gleason v. Gleason (26 N Y 2d 28, 39): “ implicit in the statutory scheme is the recognition that it is socially and morally undesirable to compel a couple whose marriage is dead to remain subject to its bonds ”.
The court must now turn these principles to the facts of the case. Since this matrimonial action brought under subdivision (1) of section 170 of the Domestic Relations Law was tried before the court without a jury, the court must make the requisite findings of fact necessary to support a judgment.
The wife’s case consisted of her testimony and tiiat of a neighbor. The husband moved to dismiss the complaint after his wife rested and, when the court reserved decision on that motion, elected to rest himself, offering no testimony or evidence whatsoever. Accordingly, balances of credibility had to be struck by the court as the trier of fact from the testimony of the plaintiff’s witnesses alone. The husband, Milton Berlin, failed to testify notwithstanding the fact that he was present during the entire trial in a position to give evidence supporting his contentions and to contradict evidence opposing his wife’s version of the cause. Moreover, he reflected no reasonable explanation for his failure to testify. Accordingly, the court is justified, in weighing the evidence of the case, in inferring that his testimony would not support his version of the case and .permits the court to draw the strongest inferences against him that the opposing evidence permits. (Dowling v. Hastings, 211 N. Y. 199; Isquith v. Isquith, 229 App. Div. 555; Meyer v. Mayo, 196 App. Div. 78.)
Based upon its findings of fact and the applicable law, this court decides that Mrs. Berlin is entitled to the divorce she seeks. This decision is reached in view of the total evidence offered during the trial. The court must a fortiori resolve the husband’s motion to dismiss against him, since under such a motion the nonmoving party is conceded to have offered truthful evidence and entitled to a view of the proof most favorable to her and to the benefit of any reasonable inferences to be drawn from the proof. (Wessel v. Krop, 30 A D 2d 764; Carter v. Castle Elec. Contr. Co., 26 A D 2d 83; Ford v. Snook, 205 App. Div. 194, affd. 240 N. Y. 624.)
The court finds that there is a dead marital relationship interred in the Berlin domicile in Woodbury, New York. Based on the evidence, the court finds that the husband has embarked and continued for an extensive period on a deliberately hostile and rude course of conduct specifically calculated to create *355 unhappiness and suffering to the wife. His many actions, such as not speaking to her for weeks and months at a time, his contemptuous treatment of her in public, his refusal to eat with his family and in general to participate in family life, reflect the morbidity of the marital relationship. His conduct is aggravatingly offensive when viewed in the uncontradicted testimony that his wife is prone to nervous and emotional disturbance and has in fact undergone psychiatric treatment and medication over an extended period. The evidence is undisputed that the husband has refused to cohabit with the wife, and in fact, the only act of cohabitation between them within the past 14 months immediately followed an attempted reconciliation after the wife had dropped a previous divorce action at her husband’s request. The husband’s motivation was that a sexual encounter would bolster his legal case in the event of continuance of divorce proceedings. The husband had the utter callousness to say to the wife that not only was he not interested in sex with her, but that she should go out and find a “ boyfriend ” to satisfy her sexual appetites. Such a statement could well be the epitaph on the tombstone of a dead marriage.
His treatment of their adopted children, which too is not denied, leaves considerable doubt as to whether the best interests of the children are served by continuing in his residential proximity. The uncontradicted testimony reflects his open statements of rejection of his adopted children.
Finally, his attitude toward his wife when she returned home from three separate hospitalizations for cancer surgery, leaving her without assistance, suggests an indifference which can only be equated with a calculated cruelty.
The husband’s almost total reliance on Rios v. Rios (34 A D 2d 325) is unavailing. He claims that the Bios case requires proof here that his mental cruelty seriously impaired his wife’s health. Actually, the court there dealt with a quarrelsome couple where “ Plaintiff failed to show that his physical or mental condition was in any way affected by appellant’s conduct ” (p. 327). The Bios majority specifically negated any effect of cruelty in its case, saying that i 6 cruelty implies wantonness or the intent to inflict suffering ” and inferred that on the facts there presented “ occasional strife, lack of domestic harmony, frequent quarrels between husband and wife and incompatibility furnish no grounds for a decree ” (p. 327). In the case at bar, we are dealing with credible uncontradicted evidence as to mental distress in the face of a cruel and wanton conduct calculated to inflict suffering.
*356 Mrs. Berlin testified as to her psychiatric care and medication for her. As was the case with all the other testimony by Mrs. Berlin, this testimony was uncontradicted and it is apparent to the court that Mrs. Berlin’s emotional agitation is high and in some substantial degree involved with her matrimonial distress. Circumstances of cruel and wanton treatment have been held sufficient to state a cause of action for divorce. (Houck v. Houck, 59 Misc 2d 1070; cf. Pierone v. Pierone, 57 Misc 2d 516; Avdoyan v. Avdoyan, 265 App. Div. 763.)
In the final analysis, the decision for divorce for cruel and inhuman treatment must come down to a balance of factors. The factors here all point to matrimonial demise. There is an extended course of cruel conduct calculated to cause mental pain, there is refusal to have sex relations, there is deliberate abuse of a disturbance-prone personality, and there is abuse of children. The wife is living in the house and the husband is living in the house. But, the husband can make nothing of this, for if the wife were to move from the house, she could reasonably fear his claim that she abandoned him, and risk the uncertainties of support litigation. Practicalities of matrimonial disputation seem to have fixed both parties in the same house for the present. The defendant’s claim that everything is fine at home with the exception of some bickering since the parties are living under the same roof and the husband is supporting the wife is simply grotesque. “ Well-being ” and “ health ” are not necessarily synonymous. Torment, humiliation and suffering detract from well-being as much as many certified diseases. Can it be seriously denied that a wife’s well-being can be endangered by her husband’s calculated and cruel misconduct Í Is it not improper to require a woman to continue to ' ‘ cohabit ’ ’ under degrading or mentally painful circumstances 1
Even regardless of a distinction between “well-being” and ‘ ‘ health ’ ’, there are ample grounds in this case to consider the wife’s health endangerment. There is no absolute requirement in the law that a medical doctor must testify for a health showing. In fact, Rios v. Rios (supra) the defendant’s judicial high water mark, makes no requirement of a testifying doctor. It is doubtless true that competent medical proof lends probative force, but this is not to say that common experiences observable by mature persons cannot be given effect where other evidence so warrants. Here is a trial where the wife and a neighbor uttered credible evidence, where the husband sat mute through <i;the entire proceeding, where the testimony recites medical treatment, and where the testimony details mental and *357 emotional upset. The parties sat and conducted themselves under the scrutiny of the trier of fact. It would be the ultimate surrender to blind mechanism to ignore the evidence and the observations of the kind made by mature people in their daily lives by requiring absolutely an utterance by a medical doctor for any belief as to health endangerment. (Matter of Allen v. Glens Falls Ins. Co., 5 A D 2d 1020; Vincent-Wilday, Inc. v. Strait, 273 App. Div. 1054; see, also, Fisch, N. Y. Evidence, § 372.)
The parties to this action were married in 1945 and have three adopted children, only two of whom are presently unemancipated minors. The husband has raised no question of custody of the children, nor has he addressed himself to the question of alimony or support payments. The wife seeks exclusive occupancy of the marital premises.
Upon review of the record of this proceeding, the court will award Mrs. Berlin custody of the two unemancipated infant children with visitation rights by Mr. Berlin to be agreed upon between the parties. In the event the parties cannot agree upon the terms of visitation, the court will, upon application on notice, fix the terms, after considering such written recommendations and suggestions as the parties may see fit to submit.
Based upon the record, the court finds ample demonstration in the testimony that Milton Berlin is a man of means and that the parties are accustomed to a rather comfortable standard of living. Accordingly, upon analyzing the evidence, the court will award Mrs. Berlin:
(a) $225 per week for her support and maintenance until her death or remarriage.
(b) Exclusive occupancy of the marital premises during the period alimony is payable. The interest and amortization on the mortgage of the marital residence, all taxes on the residence, as well as the fuel, utility, water and garbage collection costs, as well as any expense for reasonable and necessary capital repairs on the premises shall be paid by the husband, as well as the sum of $75 per month against gardeners’ services during the months of April through October in each calendar year. In the event Mrs. Berlin moves from the home, the husband need no longer pay interest, amortization or home maintenance charges of any kind, but then her alimony will be increased by $500 per month for total residential allowance.
(c) All major medical expenses reasonably and necessarily incurred by her.
(d) The sum of $734 in outstanding bills in charge accounts as testified to by Mrs. Berlin.
*358 With respect to the children, Mr. Berlin will pay to Mrs. Berlin:
(a) The sum of $100 per week each for the support and maintenance of the two children so long as they are under the age of 21 or still in full-time college attendance.
(b) The reasonable costs of room, board and tuition for the college education of the children.
(c) All reasonable medical and dental expenses for the children so long as they are under 21 or in full-time college attendance.
Mr. Berlin may, if he so desires, provide appropriate insurance in lieu of medical and dental expenses for Mrs. Berlin and the children.
Plaintiff is awarded a counsel fee in the sum of $5,000 in addition to sums already received by her for that purpose, together with the costs and disbursements of this action.