Frank D.-O’Connor, J.
The parties to this separation action were married in the City of New York on February 25, 1934, that being the first and only marriage for each. Of deep religious persuasion, their union endured for more than 35 years despite a full quota of the usual disagreements, disputes and dissensions that are the common lot of most marriages.
During the early years, in addition to discharging her obligation and responsibility as housewife and mother, plaintiff traveled several days a week to assist defendant in keeping proper books of his newly established business and over the years that business prospered and grew.
In their home life their joint perseverance in and fidelity to their marriage vows were likewise rewarded and of the union three children were born. They have now long since matured and are married with children of their own.
*544 Now in the sunset of life, with the chores of the long hard day behind, when the need for each other is greater than ever, instead of gathering about them their children and their children’s children to contemplate and enjoy together the sweet fruits of life’s trials and tribulations, the parties find themselves antagonists in this suit for separation. The pity of it all!,
Upon the trial, there was a complete failure of proof as to plaintiff’s fourth and fifth causes of action and they were withdrawn, as was plaintiff’s alternate prayer for support. Decision was reserved on defendant’s motion to dismiss the remaining causes of action and it is to that motion that the court now addresses itself.
For the sake of convenience and clarity, let us first examine plaintiff’s second cause of action. Its allegations of a failure and refusal by defendant to have normal sexual relations are set forth in the classical, clear and convincing language of the form book. Yet, the only testimony in support thereof is the weak, faltering, incomplete, indecisive and unconvincing testimony of plaintiff. Making full allowance for the fact that plaintiff is a woman of tender sensibilities and appreciating keenly her understandable reluctance to discuss the details of this phase of her complaint, the court can reach no other conclusion than that there has been a total failure of proof.
The third cause of action, in substance, alleges that “ since September 1969 * * * defendant has * * * wilfully, obstinately and deliberately failed and refused to provide any monies or pay any support whatsoever for plaintiff.” The record clearly establishes that defendant fully supported plaintiff from the day of their marriage until she left the marital domicile in August, 1969. Plaintiff testified that up until that date she lived in what she described as “ a luxury apartment house with twenty-four hour doorman .service”; that the defendant paid the usual and ordinary expenses of the household including a part-time maid, and that in addition plaintiff received a $60 weekly allowance for food; that all of her personal bills for clothing, medical and dental care and medicines, personal grooming and cosmetics, were paid for by defendant. From the record it also clearly appears that defendant was generous in providing funds for plaintiff’s travel and vacation needs and desires. The evidence established that in 1960 plaintiff spent three weeks in Israel with her sister; again a few years later she traveled for 15 days with defendant in Israel; she made at least one trip to Puerto Eico and the Caribbean; a week in Florida and then a three-month stay in Florida; most of the high holy days were *545 spent at resort hotels in the mountains or at the seashore and all this was provided by defendant. Plaintiff concedes that this level of support continued up to August, 1969.
It follows then, as night the day, that if plaintiff in September, 1969 left the marital abode without justifiable cause, this cause of action must likewise fail.
We come then to the only remaining cause of action — the first. By its language it seeks to make out a protracted course of action of cruel and inhuman conduct, for the past five years, which in the words of plaintiff’s brief “reached a crescendo point in September of 1969 compelling plaintiff to vacate the marital apartment. ” In an effort to sustain these charges plaintiff presented her brother as a corroborating witness. His testimony was chiefly hearsay, predicated upon inference, innuendo and insinuation and must be largely discounted. The testimony of the plaintiff, completely uncorroborated and vehemently denied by defendant, recites one single act of physical abuse which, she admits, occurred more than three years before she left defendant.
The remainder of plaintiff’s testimony (all uncorroborated and denied by defendant) accuses the defendant of persistent faultfinding and name-calling and thus -she seeks to -spell out a course of conduct which, to paraphrase subdivision 1 of section 200 of the Domestic Relations Law, so endangered plaintiff’s mental well-being as to render it improper for her to continue to cohabit with defendant.
At best, plaintiff has proven that her marriage was marked by lack of harmony, frequent quarrels and occasional strife, all adding up to a degree of incompatibility, but still falling far short of the statutory requirements for judicial separation.
‘ ‘ Giving plaintiff the advantage of every favorable inference that can possibly be drawn from the testimony, this record contains nothing further than that there were more or less frequent quarrels between the parties and incompatibility. That furnishes no ground for a decree of separation in this State ’ ’ (Smith v. Smith, 273 N. Y. 380, 383 [1937]). Name-calling, bickering and threats and two isolated acts of violence were held insufficient to warrant a decree of separation in Schapiro v. Schapiro (27 A D 2d 667 [1967]).
In Rios v. Rios (34 A D 2d 325, 326-327 [1970]) it was said that:
“ The law is well settled in this State that in order to obtain a separation on the ground of cruel and inhuman treatment, the plaintiff must either establish a pattern of actual physical violence or if actual violence is not involved, the conduct must be *546 such as seriously affects the health of the spouse and threatens to impair it and renders it unsafe to cohabit. The measure of proof to sustain a divorce on the ground of cruel and inhuman treatment is no less than that required for a separation. (Pierone v. Pierone, 57 Misc 2d 516.) The record here does not evidence any such proof.
‘ ‘ It has been held that conduct may produce such mental pain as to be even more cruel and inhuman than if physical pain had been inflicted. The conduct, however, must be of such a character as to seriously affect the health of the party seeking the decree. Cruelty implies wantonness or the intent to inflict suffering or conduct of such character as to seriously affect or impair the health of a spouse so as to render it unsafe or improper to cohabit with the defendant. Occasional strife, lack of domestic harmony, frequent quarrels between husband and wife and incompatibility furnish no grounds for a decree. (Avdoyan v. Avdoyan, 265 App. Div. 763 ; Traylor v. Traylor, 3 A D 2d 727.) ”
Plaintiff rejects the Rios line of cases as not reflecting the recent and rapid developments in the law of domestic relations. Yet, the theme running through all of these cases is a simple insistence that a plaintiff in a matrimonial action meet the statutory standards set by the Legislature.
Plaintiff places strong reliance upon Berlin v. Berlin (64 Misc 2d 352 [1970]). Yet, the factual differences existing between Berlin and the case at bar are obvious, numerous and important. In Berlin, unlike here, the defendant husband was present in court and refused to take the stand. There, unlike here, the defendant husband failed to deny the plaintiff’s detailed allegations of mental cruelty. There, unlike here, the corroborated, credible and uncontradicted evidence clearly established plaintiff’s mental distress in face of a cruel and wanton course of conduct calculated to inflict suffering. In the case at bar, defendant husband took the stand, emphatically and unequivocally denied plaintiff’s uncorroborated accusations and, more than all that, defendant asserted and reasserted his love of plaintiff and his great desire that she resume her rightful place in his household.
Recent decisions are replete with references, largely dicta, to what is described as the “cult of the dead marriage”. In Gleason v. Gleason and in Goldstein v. Goldstein, both reported in 26 N Y 2d 28, at page 35, the court said: ‘' Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best inter *547 ests not only of the parties but of society itself will be furthered by enabling them ‘ to extricate themselves from a perpetual state of marital limbo. ’ ” It is here interesting to note that in Gleason the parties had been living apart pursuant to a separation decree for more than 15 years, and in Goldstein a judgment of separation had been entered more than two years before the action was commenced, and so in each case a dead marriage was presented — dead in law as well as dead in fact.
In Berlin v. Berlin (supra) the trier of the facts found that the defendant husband was guilty of cruel and wanton conduct sufficient to warrant a decree and, hence, the statutory requirements for the relief sought were fully met.
In the case at bar, however, the parties were living together in every sense of the word until the end of August, 1969. Plaintiff then left the marital abode, returned for a few days in October of that year and commenced this action some three months later! Plaintiff had hardly yet entered into that “ perpetual state of marital limbo ” (Adelman v. Adelman, 58 Misc 2d 803, 805 [1969]) sufficient to warrant a judicial decree, unless we propose to substitute “ decree on demand ” for the provisions of statute.
‘ ‘ Now, we realize the cult of the ‘ dead marriage ’ has taken hold of current thinking” said the Appellate Division, First Department, in Middleton v. Middleton (35 AD 2d 371, 373 [1970]), “ but we are not prepared to say mere incompatibility alone is ground for a divorce. ’ ’ The measure of proof to sustain a divorce on the ground of cruel and inhuman treatment is no less than that required for a separation. (Rios v. Rios, 34 A D 2d 325, supra.) Conversely, the measure of proof to sustain a judicial separation on the ground of cruel and inhuman treatment is not less than that required for a divorce, for the language of subdivision (1) of section 170 (divorce) and subdivision 1 of section 200 (separation) of the Domestic Relations Law is identical. (See Mante v. Mante, 34 A D 2d 134 [1970].)
The recent amendments to the Domestic Relations Law of our State unquestionably reflect the profound and sweeping changes which have in recent years affected our entire American way of life. The tremendous impact resulting from industrialization and urbanization have, as Professor Max Rheinstein wrote 10 years ago, produced profound transformations in both the structure and the functions of the American family (17 Vand. L. Rev. 239).' The vast migration of the family from farm to city, the comprehensive emancipation of woman and her rapid involvement in business and industry, in commerce and the professions, are all significant contributing factors to the sweeping reforms *548 made in the law. Eoscoe Pound once wrote “ the law must be stable and yet it cannot stand still.” (Interpretations of Legal History 1). Indeed, it should not stand still or our civilization will surely stagnate and rapidly decline.
Yet, the stability of the marriage contract has always been a prime concern of both the legislative and judicial branches of government. In this enlightened and permissive era of ‘ ‘ dead marriages ” and “ gay unions ” such official concern for public and private morality will appear, at least to some, as quite trite and totally square.
Almost one hundred years ago, Chief Judge Church, speaking for the Court of Appeals in Wade v. Kalbfleisch (58 N. Y. 282 [1874]) said: “ The relation is always regulated by government. It is more than a contract. It requires certain acts of the parties to constitute marriage, independent of and beyond the contract. It partakes more of the character of an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community. Kent says: ‘ It has its foundation in nature, and is the only lawful relation by which Providence has permitted the continuance of the race.’ (2 Kent Com., 75.) Judge Story said: ‘ But it appears to me to be something more than a mere contract. It is rather to be deemed an institution of society, founded upon the consent and contract of the parties. ’ (Story on Con. of Laws, § 108, note.) ”
In Maynard v. Hill (125 U. S. 190, 205 [1888]) it was said that: ‘ ‘ Marriage, as creating the most important relation in life, as having more to do with the morals and civilization -of a people than any other institution, has always been subject to the control of the legislature. "
In Fearon v. Treanor (272 N. Y. 268, 272-273 [1936]) the court said:
‘ ‘ Marriage is more than a personal relation between a man and a woman. It is a status founded on contract and established by law. It constitutes an institution involving the highest interests of society. * ' * *
‘ ‘ Prom time immemorial the State has exercised the fullest control over the marriage relation, justly believing that happy, successful marriages constitute the fundamental basis of the general welfare of the people.”
Marriage has been held to be more than a civil contract, more than a mere personal relationship and, indeed, much more than a mere economic device to regulate the proprietary rights of the persons concerned. (Sweinhart v. Bamberger, 166 Misc. 256 [1937] ; see, also, Woronzoff-Daschkoff v. Woronoff-Daschkoff, *549 303 N. Y. 506 [1952] ; Fraioli v. Fraioli, 1 A D 2d 967 [1956] ; Morris v. Morris, 31 Misc 2d 548 [1961] ; Tuck v. Tuck, 18 A D 2d 101 [1963].)
The principle has perhaps never been better stated than by the learned Surrogate of Kings County in Matter of Lindgren (181 Misc. 166, 170 [1943], affd. 267 App. Div. 725, affd. 293 N. Y. 18). There it is said: ‘‘ There are three parties to every marriage contract — the two spouses and the State. Each has an interest in the maintenance of its integrity and the nation itself should have a greater interest in so doing. When the marital tie is weakened and marital obligations are lightly considered, the moral fibre of a nation is undermined.”
With these decisions in mind — and they are as valid today as when first uttered — I do not propose to disregard nor can I enlarge the guidelines established by the Legislature. (See Bright Homes v. Wright, 8 N Y 2d 157 [1960] ; People v. Kupprat, 6 N Y 2d 88 [1959] ; Matter of Russo v. Valentine, 294 N. Y. 338 [1945].) That body has not, at least as yet, ascribed incompatibility as sufficient grounds to .sustain a judgment of separation. Defendant’s motion to dismiss the complaint is granted, after trial, and judgment is found for defendant.
After both sides rested, the following colloquy took place:
‘ ‘ mb. erdheim : I want to elect at this time your Honor. I am electing your Honor in lien of a decree for support and maintenance, the plaintiff is seeking a decree of separation. The prayer for relief asks for separation or in the alternative for support and maintenance.'
‘ ‘ the court : I know. The plaintiff elects then to base his cause of action on the action for separation and not for separate support and maintenance?
“ mr. erdheim: That’s correct.
‘ ‘ mr. atkins : I have no objection to the election, your Honor. I move for a dismissal of the complaint and I renew the motion.” In view of my findings and decision, and because of plaintiff’s current illness, plaintiff is permitted to withdraw her election, if she be so advised. Plaintiff may proceed under section 236 of the Domestic Relations Law (Smith v. Smith, 60 Misc 2d 692 [1969] ; Matter of Smith v. Smith, 53 Misc 2d 712 [1966]), within 30 days after date of this memorandum decision and may refer to the pertinent portions of the trial transcript and the exhibits. Defendant is directed to pay to the plaintiff the sum of $3,500 as and for the plaintiff’s counsel fees to be paid at the office of her attorneys within 20 days after the service of a copy of the judgment to be entered hereon.