Nanette Dembitz, J.
This support proceeding under section 412 of the Family Court Act presents the issue of whether a wife’s refusal to enagage in marital sexual relations justifies her husband’s desertion from the marital home and failure to support her. As respondent contends, a wife’s refusal to have marital sexual relations has been held to constitute abandonment entitling* the husband to a judgment of separation. (See Diemer v. Diemer, 8 N Y 2d 206, 210; Mirizio v. Mirizio, 242 N. Y. 74, 80.)
Despite some conflict in petitioner’s and respondent’s versions of their marital history, the essential facts are clear. Petitioner, aged 48, and respondent aged 50, married 25 years, and with an adult married son, had never lived apart prior to respondent’s departure from the marital home on May 4,1970. While respond *51 ent complained of some inconsiderate habits on petitioner’s part, their relationship manifested a normal — and indeed better than normal - — degreé of harmony and satisfaction except for the area of sexual intercourse. For a period which the court finds to be 10 years (petitioner conceded the period to be 4 or 5 years), petitioner had refused to engage in sexual intercourse with respondent and had indeed discouraged any type of sexual physical contact, apparently because she had developed a feeling of withdrawal and revulsion with respect to such.contact with anyone. Throughout this period respondent indicated to petitioner a continuing desire for a sexual relation with her. Despite her aversion to it, however, he continued to manifest affection and concern for her and to pay her attentions, such as gifts of furs and jewelry and expensive vacation trips together.
On May 4, 1970, respondent told petitioner for the first time that he wanted a divorce. Respondent testified — and the court, with ample opportunity to appraise credibility credits his testimony— that the background of this event was that on the previous day, which was his fiftieth birthday, he determined to break with petitioner in order to find a more complete relationship ; that he had decided it was now or never if he was to live before he died. While he had not contemplated leaving petitioner forthwith, she became so agitated during their conversation that he hastily moved out of the marital home.
The principle declared in Diemer (supra), like others developed under the Domestic Relations Law in actions for separation and divorce, is to be applied in support actions in this court. (See Matter of Steinberg v. Steinberg, 18 N Y 2d 492, 497, 498.) And if the wife is at “ fault ” as the “ fault ” concept has been enunciated under the Domestic Relations Law, her petition in this court for support may be denied unless she is in danger of becoming a public charge. (See Brownstein v. Brownstein, 25 A D 2d 205, 207 [1st Dept., 1966].)
This court holds, however, that it may, in a support action, consider other principles besides the rulings on “fault ”. For reasons discussed below, this court is not obliged to apply those rules rigidly, nor to attempt to predict the result in respondent’s pending divorce action or whether, in a hypothetical divorce suit by petitioner, she would be denied support under section 236 of the Domestic Relations Law by reason of misconduct entitling her husband to a divorce. (Compare Matter of Glover v. Glover, 64 Misc 2d 374, 377 [Family Ct., Queens, 1970].)
It has been suggested that: ‘‘ Since the emphasis on the doctrine of fault has been eroded in the granting of divorce so, too, should the fault doctrine be dispensed with in the granting of *52 alimony ’'. (Dulber v. Dulber, 63 Misc 2d 259, 262 [Snp. Ct., Queens, 1970].) Compare Mante v. Mante (34 A D 2d 134 [2d Dept., 1970]), as to the diminished significance of “fault” throughout the revised New York divorce law. Further, value judgments and changing policies as to when dissolution should be permitted are not addressed to the question of when fairness requires the wife’s support. In any event, in a support action in which this court is directed merely to give ‘ ‘ due regard to the circumstances ” of both parties (Family Ct. Act, § 412), this court believes that it may temper “ fault ” doctrines by equitable considerations.
Here, contrary to the situation in Diemer and Mirisio (supra.) —• where the wife’s refusal of sexual relations was deemed an abandonment — there is no indication that petitioner refrained from marital relations willfully, deliberately, or purposefully, to gain her own ends. Rather, it seems clear that petitioner’s physical rejection of respondent was due to a psychic block; if it had been due to an organic paralysis, it certainly would not be considered an abandonment. Further, her refusal had no concomitant of conscious cruelty or humiliation of her spouse, nor was there any overt resultant suffering by the spouse. (Contrast Berlin v. Berlin, 64 Misc 2d 352, 356 [Sup. Ct., Nassau, 1970]; Houck v. Houck, 59 Misc 2d 1070, 1071, 1073 [Sup. Ct., Chenango, 1968].) (Certainly the evidence does not support respondent’s contention, as an alternative to the abandonment theory, that petitioner subjected respondent to cruel and inhuman treatment, as that basis for a separation has been interpreted by the courts.)
Again in contrast to Diemer and Mirizio (supra), respondent continued to live with petitioner for a number of years maintaining a marital relationship in all respects other than sexual. Though he did not willingly accept sexual abstinence, he acquiesced in it (compare Lowenfish v. Lowenfish, 100 N. Y. S. 2d 610, 612-613 [Sup. Ct., Kings, 1950], affd. 278 App. Div. 716 [2d Dept., 1951]), and in effect consented — albeit reluctantly — to a partial separation. (Compare Steinberg, supra, p. 498.) Respondent did not indicate that he considered petitioner’s rejection of physical intimacy a crucial deficiency by suggesting psychiatric consultation (though he knew that she had had psychiatric treatment in their early married life and was acquainted with her psychiatrist), or other therapy.
In sum, it seems a misnomer to term petitioner’s refusal of sexual relations an abandonment while her interrelationship with respondent as his spouse continued in every other aspect for a decade. In any event, if her conduct should be deemed an *53 abandonment, his was in effect a condonation of it. (As to con-donation of an abandonment, see 1 Foster and Freed, Law and the Family [1966], §§ 7.10, 7.11; [Cum. Supp., 1970] p. 46; see, also, Solomon v. Solomon, 290 N. Y. 337, 342.) Further, from the standpoint of fairness, respondent’s conduct may be deemed to constitute an equitable estoppel. (As to the general doctrine of estoppel by conduct, see Triple Cities Constr. Co. v. Maryland Cas. Co., 4 N Y 2d 443, 448; Richard v. Credit Suisse, 242 N. Y. 346, 351; Continental Nat. Bank v. National Bank of Commonwealth, 50 N. Y. 575, 586; cf. Friedman v. Libin, 4 Misc 2d 248, 250 [Sup. Ct, Bronx, 1956].) For, while petitioner aged from 38 to 48, respondent gave her a sense of security in regard to his acceptance of her sexual disinclination and disability and of their relationship, and gave no indication of an intention to leave her.
A husband’s obligation to support his wife — stemming from the male’s more advantageous economic position in our culture, coupled with the female’s dependent role — cannot be deemed terminated in this case.
This court will, therefore, fix support in accordance with the means and circumstances of both parties. In doing so, their incompatibility with respect to sexual relations will be of weight, since it appears to justify respondent’s desire for a separate residence and attendant expenses. (Compare Orenstein v. Oremstein, 26 A D 2d 928, 929- [1st Dept., 1966], affd. 21 N Y 2d 892.)
¡Respondent’s motion, after hearing, to dismiss the petition for support, is denied.